STATE of Wisconsin, Plaintiff-Respondent,

v.

Craig DAMASKE, Defendant-Appellant.†

Court of Appeals

*No. 96–1762–CR. Oral argument May 28, 1997.—Decided June 24, 1997.*

(Also reported in 567 N.W.2d 905.)

†Petition to review denied.

172

173

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephen M. Glynn* and *Robert R. Henak* of *Shellow, Shellow & Glynn, S.C.*, of Milwaukee. There was oral argument by *Robert R. Henak*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general. There was oral argument by *Warren D. Weinstein*.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.    Craig Damaske appeals from a judgment, entered on a "no contest" plea, convicting him of one count of second-degree sexual assault, *see* § 940.225(2)(a), STATS., and from the trial court's order denying his motion for postconviction relief.[1] He claims: (1) that his request-for-substitution-of-judge

---

[1] Section 940.225, STATS., provided, as pertinent to this appeal:

filed against the Honorable Diane S. Sykes prevented her from hearing his case; (2) that the trial court erred in denying his motion to withdraw his plea; (3) that the trial court erred in considering evidence during the sentencing hearing that Damaske had previously sexually assaulted other women; and (4) that he did not have effective assistance of counsel. We affirm.

## I.

A criminal complaint charging Damaske with four counts of second-degree sexual assault was filed on May 3, 1995. It alleged that a young woman went to a tavern where Damaske worked to apply for a job as an exotic dancer at a stag party he was planning for a friend. Later, according to the complaint, after Damaske and the woman went to a number of other taverns, they returned to Damaske's tavern where she auditioned for the job. The complaint alleged that Damaske raped the woman during the audition—engaging in three different acts of penis-to-vagina penetration, and one act of tongue-to-vagina penetration. All the time, the complaint charged, the woman told Damaske " 'no' " and " 'stop it' " "but did not resist because she feared the defendant would harm

---

(2) SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class C felony:

(a) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.

This section was amended by 1995 Wis. Act 69 to increase the penalty from a ten-year "Class C felony," *see* § 939.50(3)(c), STATS., to a twenty-year "Class BC felony," *see* § 939.50(3)(bc), STATS. 1995 Wis. Act 69, §§ 3, 4, & 5. The new penalties apply to crimes committed after the Act's effective date, which was December 2, 1995. 1995 Wis. Act 69, § 20(1).

her." On May 15, 1995, the State filed an Information that charged all four counts.

On May 22, 1995, Damaske's lawyer and the prosecutor appeared before the Honorable David A. Hansher for a scheduling conference. Judge Hansher's clerk advised them that August 21, 1995, would be the date for the final pretrial conference, and that the trial would start on August 30, 1995. Judge Hansher then told them that the Honorable Diane S. Sykes would preside over the pretrial conference and the trial, but that he, Judge Hansher, was willing to take Damaske's plea if he wanted to enter one before August 1.[2] Damaske was not present. When he appeared later that afternoon, Judge Hansher reiterated: "Make sure your client knows it goes trial [*sic*] before Judge Sykes in a different building." Damaske filed his substitution request against Judge Sykes on August 10, 1995.

Damaske filed a motion *in limine* to exclude "other acts" evidence authorized by RULE 904.04(2), STATS.[3]

---

[2] Judge Hansher told the parties:

I'm willing to take the plea. As long as it's before August 1, I'll take the plea. You can choose your judge I guess.

[3] RULE 904.04, STATS., provides:

**Character evidence not admissible to prove conduct; exceptions; other crimes. (1)** CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(a) *Character of accused.* Evidence of a pertinent trait of the accused's character offered by an accused, or by the prosecution to rebut the same;

(b) *Character of victim.* Except as provided in s. 972.11 (2), evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

177

The State, on the other hand, sought an order *in limine* under RULE 904.04(2) permitting the introduction of evidence that Damaske had raped three other women, at the tavern and at his residence, in 1983 and 1986. Damaske was never charged in connection with those alleged incidents.

On August 21, 1995, Judge Sykes denied Damaske's request for substitution as untimely because he had "actual notice" of the reassignment from Judge Hansher on May 22. Judge Sykes also granted Damaske's motion to adjourn the trial to permit him to review the material that the State sought to have admitted under RULE 904.04(2), STATS. The trial was set for October 23, 1995. At a pretrial hearing on September 12, 1995, Judge Sykes granted the State's motion *in limine* to permit introduction of the prior sexual assaults under RULE 904.04(2).

At an October 13, 1995, pretrial conference, the parties told Judge Sykes that they had plea-bargained the case: Damaske would plead "no contest" to one count, the other counts would be dismissed; the State would recommend the maximum penalty of ten years in prison, and the trial court would order a presentence report. After hearing from the victim, who told Judge Sykes that she did not object to the plea bargain, Judge Sykes adjourned the case until October 23, 1995, for entry of Damaske's plea.

---

(c) *Character of witness.* Evidence of the character of a witness, as provided in ss. 906.07, 906.08 and 906.09. (2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

178

On October 23, 1995, after going through an extended personal colloquy with Damaske, as required by § 971.08(1), STATS., and after making certain that Damaske understood that she could sentence him to prison for ten years and that the State was recommending such a sentence, Judge Sykes accepted Damaske's "no contest" plea, and remanded him into custody until the sentencing date, which was set for November 17, 1995. On November 17, 1995, sentencing was adjourned because Damaske had not cooperated with the presentence writer, apparently on the advice of lawyers who now represent him on this appeal.[4]

---

[4] Damaske's lawyer explained the situation to Judge Sykes as follows:

From the last time we were in court, the office of Shellow, Shellow & Glynn [,] representatives from that office have visited with Mr. Damaske on at least four separate occasions and apparently have made contact with him and discussed matters concerning this case and based on things that I know, reviewed transcripts with Mr. Damaske, and it's my further understanding that it was the father of the defendant, at least that's what I've been told, the father of the defendant who had asked the law firm to involve itself in this procedure.

Mr. Glynn and Mr. Henak from that same firm, I know from jail records, have been to visit Mr. Damaske in the infirmary and as of today's date, no one from that law firm has contacted me in writing or by phone or by fax to inform me that they in any way represent Mr. Damaske.

So, I put that out on the record, Judge, because I'm the attorney of record. No appearance has been made, no letter of retainer has been submitted to the Court from Mr. Glynn's office and I can only assume that it's because of the various concerns that Mr. Damaske's, the defendant, father has in this case that that law firm has been asked to review matters.

In any event, as a result of a conversation that was had between the defendant and Mr. Glynn, it was the defendant's understanding that he was not to talk to anybody. When I had an associate visit with Mr. Damaske on one occasion without my presence, the associate was told by Mr. Damaske that he had no comment for him, so under the circumstances once I had a chance

Damaske reaffirmed, however, that he wanted to keep the lawyer who was then representing him, and told Judge Sykes that he would cooperate with the presentence writer. The matter was adjourned to December 8, 1995, for sentencing.

On December 8, 1995, Damaske appeared before Judge Sykes for sentencing. Damaske's lawyer affirmed that he had reviewed the presentence report with Damaske and that they had no corrections. Damaske's lawyer objected, however, to the trial court's consideration for sentencing of the evidence it had ruled admissible under RULE 904.04(2), STATS. The trial court rejected Damaske's objection, noting correctly:

> The case law is clear that the state can submit uncharged, unproven offenses, dismissed cases and so on all for consideration for what they are worth in terms of the Court fashioning an appropriate sentence.

Damaske requested that the sentencing be adjourned, which Judge Sykes granted. The case was adjourned until January 5, 1996.

On January 5, 1996, a different prosecutor appeared on the State's behalf, and Damaske objected because the prosecutor's sister had an office-sharing arrangement with the lawyer representing Damaske. Judge Sykes determined that there was no conflict, a ruling that is not challenged on this appeal, and denied Damaske's request to have the original prosecutor appear. Judge Sykes again asked Damaske's attorney

---

to discuss matters completely with Mr. Damaske, he explained to me what he thought was the right thing to do and that was to say nothing and at one time he was at least under the belief that he was going to be hiring new counsel as indicated in this memo.

whether he had reviewed the presentence report with Damaske and, if so, whether there were "any factual corrections that need to be made to the pre-sentence itself." Damaske's attorney replied that "there is really nothing" other than some typographical errors that had already been mentioned. The presentence report did not mention Damaske's alleged prior sexual assaults.

During the January 5th sentencing hearing Judge Sykes heard from a woman who claimed that Damaske had brutally raped her in 1986, and how that had affected her. Judge Sykes also heard from the victim in this case, and how the rapes had affected her. After statements by both the State and Damaske's lawyer, Damaske attacked the fairness of the proceeding:

> Well, I would like to say that these whole court proceedings have been totally unfair. Starting out with four counts that I am allegedly charged with it is almost impossible for a middle class person to defend himself. It is almost impossible. Everybody in the jail, the pod, gets a free attorney. This is like $40,000. You're forced to plead no contest. You're forced by the state and the proceedings.
>
> Everything [Damaske's attorney] motioned that he asked for was denied. He did not get one motion granted to him. But [the prosecutor], everything he asked for the Court was with open arms. . . .
>
> Nobody ever said [one of the lawyers representing Damaske on this appeal] was my attorney. [The lawyer then representing Damaske] has been on my left side ever since this thing started. If I knew there was going to be a trial today, that my attorney could not question these people, these so called witnesses I would not have ever plead no contest. I am an innocent man. That's all I have to say.

In response, Judge Sykes gave Damaske a chance to confer with his lawyer to see if Damaske was going to stand by his plea. After conferring with his lawyer, Damaske indicated that he wanted to withdraw his "no contest" plea. Damaske's lawyer responded that he would seek to withdraw from the case if Damaske withdrew his plea. Judge Sykes set the matter down for further proceedings on January 19, 1996, during which time Damaske could be evaluated by the office of the State Public Defender to see whether he qualified for its representation. Judge Sykes set January 12th as the date by which Damaske would have to file his motion to withdraw his plea, and by which Damaske's lawyer would have to file his motion to withdraw from the case.

On January 30, 1996, Judge Sykes summarized what had happened since January 5:

> When we were last in court, the case was scheduled for sentencing. . . .
>
> [Damaske] indicated a desire . . . to withdraw his no contest plea and we scheduled the matter for further proceedings accordingly, as well as a deadline for filing of that motion.
>
> [Damaske's attorney] announced his intention, if that motion was going to go forward, to move to withdraw from the case because of conflict of interest created by the situation. Nothing was filed prior to the next court date. That date had to be rescheduled to today. We were informed that the sentencing was going to proceed. The defendant had changed his mind back again and wished to remain in the same posture that the case was in when it was here previously, that is, scheduled for sentencing and wished to proceed to sentencing, and then this morning there was filed a pro se motion to withdraw the no contest plea, apparently drafted by

defense counsel at the defendant's request but signed by the defendant himself rather through counsel, together with a motion from [Damaske's attorney] to withdraw as counsel as a result of the defendant's apparent now continuing desire to move to withdraw the no contest plea in the case.

Damaske's lawyer explained what had happened:

Judge, with respect to the filing of the motion, on the 11th day of January I had prepared notice of motion and motion to withdraw as counsel and it's dated the 11th day of January, 1996. I visited with Mr. Damaske in the jail and I told him that the motions had to be filed by the 12th. I explained to him that it was necessary to have them filed in a timely fashion because that is the way the Court had calendared the time table [*sic*] and that in fact if the Court would contemplate such a motion, that there would be a necessity to have a response from the State either in writing or through some type of testimony which would have also required me as his attorney to be called by the State and I'm certain that's what would have happened, to explain what I had done during the course of my representing Mr. Damaske.

I presented Mr. Damaske with the pro se motion to withdraw the no contest plea, because this was his wish, and I told him if he wanted me to file it, I would and rather than sign it and date it for purposes of filing for purposes of further hearings on the matter, Mr. Damaske signed the bottom of a copy of the pro se motion to withdraw the no contest plea, stating, "Please do not file. I would like to proceed with sentencing. Dated January 12th, 1996. Craig Damaske."[5]

[5] A copy of that document with Damaske's signature is in the appellate record.

183

As noted from Judge Sykes's summary, Damaske had changed his mind again—again seeking to withdraw his plea. Judge Sykes found that Damaske had, however, "waived his right to move prior to sentencing to withdraw his no contest plea, because he did not meet the deadline established by the Court for doing so." Judge Sykes followed the State's recommendation and sentenced Damaske to a ten-year period of incarceration.

## II.

As we have seen, Damaske claims: (1) that his request-for-substitution-of-judge filed against Judge Sykes prevented her from hearing his case; (2) that Judge Sykes erred in denying his motion to withdraw his plea; (3) that Judge Sykes erred in considering evidence during the sentencing hearing that Damaske had previously sexually assaulted other women; and (4) that he did not have effective assistance of counsel. We discuss these claims in turn.

### A. *Substitution request.*

Damaske was told on May 22, 1995, that Judge Sykes would preside over his trial. He did not, however, file his request for substitution until August 10, 1995. Judge Sykes determined that the request was not timely because it was filed more than fifteen days after Damaske received notice of her assignment. *See* § 971.20(5), STATS.[6] Damaske could have challenged

---

[6] Section 971.20, STATS., provides:

**Substitution of judge. (1)** DEFINITION. In this section, "action" means all proceedings before a court from the filing of a complaint to final disposition at the trial level.

**(2)** ONE SUBSTITUTION. In any criminal action, the defendant has a right to only one substitution of a judge, except under sub. (7).

The right of substitution shall be exercised as provided in this section.

**(3)** SUBSTITUTION OF JUDGE ASSIGNED TO PRELIMINARY EXAMINATION. (a) In this subsection, "judge" includes a court commissioner who is assigned to conduct the preliminary examination.

(b) A written request for the substitution of a different judge for the judge assigned to preside at the preliminary examination may be filed with the clerk, or with the court at the initial appearance. If filed with the clerk, the request must be filed at least 5 days before the preliminary examination unless the court otherwise permits. Substitution of a judge assigned to a preliminary examination under this subsection exhausts the right to substitution for the duration of the action, except under sub. (7).

**(4)** SUBSTITUTION OF TRIAL JUDGE ORIGINALLY ASSIGNED. A written request for the substitution of a different judge for the judge originally assigned to the trial of the action may be filed with the clerk before making any motions to the trial court and before arraignment.

**(5)** SUBSTITUTION OF TRIAL JUDGE SUBSEQUENTLY ASSIGNED. If a new judge is assigned to the trial of an action and the defendant has not exercised the right to substitute an assigned judge, a written request for the substitution of the new judge may be filed with the clerk within 15 days of the clerk's giving actual notice or sending notice of the assignment to the defendant or the defendant's attorney. If the notification occurs within 20 days of the date set for trial, the request shall be filed within 48 hours of the clerk's giving actual notice or sending notice of the assignment. If the notification occurs within 48 hours of the trial or if there has been no notification, the defendant may make an oral or written request for substitution prior to the commencement of the proceedings.

**(6)** SUBSTITUTION OF JUDGE IN MULTIPLE DEFENDANT ACTIONS. In actions involving more than one defendant, the request for substitution shall be made jointly by all defendants. If severance has been granted and the right to substitute has not been exercised prior to the granting of severance, the defendant or defendants in each action may request a substitution under this section.

**(7)** SUBSTITUTION OF JUDGE FOLLOWING APPEAL. If an appellate court orders a new trial or sentencing proceeding, a request under this section may be filed within 20 days after the filing of the remittitur by the appellate court, whether or not a request for substitution was made prior to the time the appeal was taken.

prohibition." *State ex rel. Nowak v. Waukesha County Circuit Ct.*, 169 Wis. 2d 395, 397, 485 N.W.2d 419, 420 (Ct. App. 1992); *see also Clark v. State*, 92 Wis. 2d 617, 631, 286 N.W.2d 344, 349 (1979) (trial judge's ruling on whether a request for substitution is timely can be reviewed by "requesting the court of appeals to exercise its supervisory authority"). He did neither. Moreover, he could have gone to trial before Judge Sykes and, if

**(8)** PROCEDURES FOR CLERK Upon receiving a request for substitution, the clerk shall immediately contact the judge whose substitution has been requested for a determination of whether the request was made timely and in proper form. If no determination is made within 7 days, the clerk shall refer the matter to the chief judge for the determination and reassignment of the action as necessary. If the request is determined to be proper, the clerk shall request the assignment of another judge under s. 751.03.

**(9)** JUDGE'S AUTHORITY TO ACT. Upon the filing of a request for substitution in proper form and within the proper time, the judge whose substitution has been requested has no authority to act further in the action except to conduct the initial appearance, accept pleas and set bail.

**(10)** FORM OF REQUEST. A request for substitution of a judge may be made in the following form:

STATE OF WISCONSIN

CIRCUIT COURT

.... County

State of Wisconsin

    vs.

.... (Defendant)

Pursuant to s. 971.20 the defendant (or defendants) request (s) a substitution for the Hon. . . . . as judge in the above entitled action.

Dated . . . ., 19. . .

         .... (Signature of defendant or defendant's attorney)

**(11)** RETURN OF ACTION TO SUBSTITUTED JUDGE. Upon the filing of an agreement signed by the defendant or defendant's attorney and by the prosecuting attorney, the substituted judge and the substituting judge, the criminal action and all pertinent records shall be transferred back to the substituted judge.

convicted, challenged on appeal Judge Sykes's denial of the substitution request. *See Clark*, 92 Wis. 2d at 631, 286 N.W.2d at 349 (trial judge's ruling on whether a request for substitution is timely can be reviewed on appeal from judgment of conviction following trial). Damaske did not do this either. Rather, he entered a "no contest" plea, *see* § 971.20(9), STATS.[7]

---

[7] Damaske argues that § 971.20(9), STATS., which permits a judge against whom a timely request for substitution has been filed to "accept pleas," refers only to pleas offered on the day the request is filed. The language of § 971.20(9) contains no such limitation. Damaske, however, points to the following language in the Judicial Council Note:

> Sub. (9) is prior sub. (2), amended to allow the judge whose substitution has been requested to accept any plea. The prior statute allowed the judge to accept only pleas of not guilty. This revision promotes judicial economy by allowing the judge whose substitution has been requested to accept a guilty or no contest plea tendered by the defendant before the action is reassigned. Defendants preferring to have guilty or no contest pleas accepted by the substituting judge may obtain that result by standing mute or pleading not guilty until after the action has been reassigned.

Although one possible inference that can be drawn from this note is that the plea accepted by the judge against whom a substitution has been timely filed must be entered at the same proceeding at which the request is filed, the statute is not so limited, and it is to a statute's clear language that we owe obeisance, not it's legislative history. *See Goodyear Tire & Rubber Co. v. DILHR*, 87 Wis. 2d 56, 74, 273 N.W.2d 786, 796 (1978). Indeed, many requests are filed with the clerk and not presented to the judge at a proceeding. *See* § 971.20(3)(b), STATS. ("A written request for the substitution of a different judge for the judge assigned to preside at the preliminary examination may be filed with the clerk, or with the court at the initial appearance."). Nevertheless, we need not decide this issue because of our conclusion that by entering that plea without either a reservation of rights or seeking immediate review of

"A guilty plea, made knowingly and voluntarily, waives all nonjurisdictional defects and defenses, including alleged violations of constitutional rights prior to the plea." *State v. Aniton*, 183 Wis. 2d 125, 129, 515 N.W.2d 302, 303 (Ct. App. 1994). This is true, of course, of all pleas that result in conviction, "whether denominated as a 'guilty plea,' a 'no contest plea,' or an '*Alford* plea.'" *State v. Kazee*, 192 Wis. 2d 213, 219, 531 N.W.2d 332, 334 (Ct. App. 1995).[8] As a matter of policy, however, § 971.31(10), STATS., preserves to a defendant the right to appellate review of the denial of motions to suppress evidence "notwithstanding the fact that [the] judgment [of conviction] was entered upon a plea of guilty." This provision applies to "no contest" pleas as well. *State v. Esser*, 166 Wis. 2d 897, 899 n.1, 480 N.W.2d 541, 542 n.1 (Ct. App. 1992). Although § 971.20(9), STATS., provides that, with the exception of conducting an initial appearance, accepting pleas, or setting bail, "the judge whose substitution has been requested has no authority to act further in the action" following the "filing of a request for substitution in proper form and within the proper time," this is a limitation on the trial judge's competency to act, not on his

Judge Sykes's denial of the request, Damaske waived whatever right he had to prevent Judge Sykes from imposing sentence. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) ("cases should be decided on the narrowest possible ground").

[8] An "*Alford*" plea is one where the defendant accepts conviction while simultaneously proclaiming his or her innocence. *See North Carolina v. Alford*, 400 U.S. 25 (1970). Such pleas are permitted in Wisconsin. *State v. Garcia*, 192 Wis. 2d 845, 856–860, 532 N.W.2d 111, 115–117 (1995).

or her jurisdiction. *See Aniton*, 183 Wis. 2d at 129, 515 N.W.2d at 304 ("The circuit court lacks criminal subject-matter jurisdiction only where the complaint does not charge an offense known to law."). Accordingly, the statutory right of substitution may be waived. *State v. Hollingsworth*, 160 Wis. 2d 883, 891, 467 N.W.2d 555, 558 (Ct. App. 1991). *See also Clark*, 92 Wis. 2d at 630–631, 286 N.W.2d at 349 (defendant waives right to complain on appeal that a timely filed request for substitution was not honored when defendant fails to diligently assert right); *Nowak*, 169 Wis. 2d at 397–398, 485 N.W.2d at 420 (waiver by failure to promptly seek review of denial of request for substitution).

Had the legislature intended to permit defendants to obtain post-judgment review of a trial judge's denial of a substitution request "notwithstanding the fact that such judgment was entered upon a plea of guilty," § 971.31(10), STATS., it would have so provided. It has not. And for good reason. Absent application of a guilty-plea-waiver rule and the requirement that a defendant seek timely review of a trial judge's rejection of a request for substitution, the request could lie dormant, like a hibernating mole, called from its sleep only if the defendant were dissatisfied with his or her sentence. By entering his plea and by proceeding to sentencing without either seeking a review of Judge Sykes's denial of his request for substitution or at least reserving the right to appeal from that denial, Damaske waived any objection to Judge Sykes's competency to "act further" in his case.[9]

---

[9] We do not decide whether such a reservation of rights would have been effective, given the alternate routes to seek review of a trial judge's denial of a substitution request. *See*

## B.  *Damaske's attempt to withdraw his plea.*

### 1.  *Prior to sentencing.*

Prior to sentencing, a "defendant should be allowed to withdraw a guilty plea for any fair and just reason, unless the prosecution would be substantially prejudiced." *State v. Canedy*, 161 Wis. 2d 565, 582, 469 N.W.2d 163, 170 (1991) (italics deleted). Whether that standard is satisfied, however, rests within the trial court's discretion. *Id.*, 161 Wis. 2d at 579, 469 N.W.2d at 169. An evidentiary hearing is required unless "the defendant fails to allege sufficient facts in his motion to raise a question of fact, or [if the motion] presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *Nelson v. State*, 54 Wis. 2d 489, 497, 195 N.W.2d 629, 633 (1972).

The trial court here was presented with a defendant who professed a desire to plead "no contest" but, at the last moment prior to imposition of sentence, had second thoughts. The trial court appropriately gave him time to confer with his lawyer, and, appropriately, set a time within which Damaske would have to file his motion to withdraw his plea. As *Nelson* recognizes, an evidentiary hearing is not required unless the motion papers allege facts, which, if true, would entitle the

---

*Gross*, 227 Wis. at 300, 277 N.W. at 665 (only dispositive issue need be addressed); *Blalock*, 150 Wis. 2d at 703, 442 N.W.2d at 520 ("cases should be decided on the narrowest possible ground"). *But see State v. Kazee*, 192 Wis. 2d 213, 219, 531 N.W.2d 332, 334 (Ct. App. 1995) (attempt to preserve issue by agreement despite guilty-plea-waiver-rule ineffective).

defendant to the relief sought. Given that Damaske not only did not file his motion within the time set by the trial court, but affirmatively told his lawyer not to file the papers, he cannot now be heard to complain that his motion not filed should have been heard.[10] This is as clear a case of waiver as can be imagined. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 31, 559 N.W.2d 563, 568 (1997) (waiver is the " 'voluntary and intentional relinquishment of a known right' ") (cited source omitted). The decision to accept conviction *via* a voluntary plea and, here, its reaffirmation, is a " 'grave and solemn act' " and should not be so lightly treated that it takes on the character of "a move in a game of chess." *See United States v. Hyde*, — U.S. —, 117 S. Ct. 1630, 1634, 137 L.Ed.2d 935, 942 (1997) (quoted source omitted). The trial court acted well within its discretion in concluding that Damaske's attempt to again change his mind the morning of sentencing came too late.

2. *After sentencing.*

"After sentencing, a defendant who seeks to withdraw a guilty or no contest plea carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw the plea to correct a 'manifest injustice.' " *State v. Krieger*, 163 Wis. 2d 241, 249, 471 N.W.2d 599,

---

[10] As noted by his lawyer's in-court recounting of the events leading up to the sentencing hearing on January 30, 1996, Damaske wrote on the motion that his lawyer had prepared to withdraw Damaske's plea: "Please do not file, I would like to proceed with sentencing." (Uppercasing omitted.) Damaske wrote, dated, and signed this statement on January 12, 1996, the date by which the trial court indicated that any motion to withdraw the plea had to be filed.

602 (Ct. App. 1991) (quoted source omitted). Whether to grant or deny a motion to withdraw a plea "is addressed to the sound discretion of the trial court and we will only reverse if the trial court has failed to properly exercise its discretion." *Id.*, 163 Wis. 2d at 250, 471 N.W.2d at 602.

On this appeal, Damaske gives two reasons in support of his claim that withdrawal of his plea is necessary to correct a "manifest injustice." This is how he frames the first ground in his appellate brief:

> At the time he entered his no contest plea, Mr. Damaske did not know that his sentence would turn in part upon the bald claims of other alleged victims, the allegations of which he would be denied any opportunity to refute despite his claims that they were false.

This overstates it. As we have seen, Damaske knew at the January 5, 1996, sentencing hearing that the trial court would consider the statements by the women who claimed that Damaske had raped them, and that those women would not be subject to cross-examination.[11] Indeed, he knew that the trial court would consider those statements by December 8, 1995. He also knew, because it was explained to him at the October 23, 1995, plea hearing, that by entering his plea he was, as phrased by the trial court, giving up his "right to confront the witnesses against" him.

---

[11] Damaske told the trial court on January 5, 1996: "If I knew . . . that my attorney could not question these people . . . I would not have ever plead no contest." Yet, a week later, he reaffirmed his plea and wrote that he wanted "to proceed with sentencing."

On January 5, 1996, Damaske requested and was granted an adjournment to file a motion to withdraw his plea. Several days later, on January 12, after conferring with his lawyer, Damaske decided to go ahead with the sentencing nevertheless. In light of this reaffirmation of his plea and his stated desire, as expressed in his handwritten note, "to proceed with sentencing," he cannot now assert that he would not have entered his plea if he had known that the trial court would consider at sentencing the statements of the other women whom he could not confront. *See State v. Paske*, 121 Wis. 2d 471, 473–475, 360 N.W.2d 695, 696–697 (Ct. App. 1984) (where defendant knew prior to sentencing of prosecutor's breach of plea bargain, defendant's decision not to withdraw his no-contest pleas prior to imposition of sentence was reaffirmation of those pleas). As the supreme court explained more than two decades ago when a defendant did not challenge the prosecutor's breach of a plea bargain: "The situation is not so much waiver of claimed error, rather it is an abandonment of right to object by persisting in a plea strategy after the basis for the claim of error is known to defendant." *Farrar v. State*, 52 Wis. 2d 651, 660, 191 N.W.2d 214, 219 (1971) (parenthetical and footnote omitted). We apply this rationale here. Damaske has not established that failure to permit him to withdraw his no-contest plea because of his alleged misunderstanding of what the trial court would consider at sentencing (which is belied by the record) will result in a "manifest injustice," and the trial court here acted well within its discretion in denying that relief.

The second ground upon which Damaske bases his claim that withdrawal of his plea is necessary to correct a "manifest injustice" is, as expressed in his appellate brief:

> Mr. Damaske's plea also was not knowing and voluntary because it was in effect coerced by his belief that he could not afford to have the case tried, and thus the direct result of fear, ignorance and mistake.

The only authority cited for the unique proposition that a defendant can withdraw a plea after imposition of sentence because he or she did not want to spend the resources that would be necessary if a not-guilty plea were pursued is *State v. Booth*, 142 Wis. 2d 232, 418 N.W.2d 20 (Ct. App. 1987), which does not stand for that proposition at all. Every defendant, of course, has a right to counsel, *Gideon v. Wainright*, 372 U.S. 335 (1963), and Wisconsin provides counsel for those defendants who cannot afford to hire a lawyer. *See* CHAPTER 977, STATS. Few pleas would ever be final if they could be withdrawn because after sentencing a non-indigent defendant decides that in retrospect that he or she should have spent the money necessary to go to trial. Damaske has not demonstrated that permitting him to withdraw his plea on the second-asserted ground is necessary to prevent a "manifest injustice"; the trial court acted well within its discretion in denying that relief on this second ground as well.

C. *Sentencing.*

Damaske claims that the trial court denied him due process in considering evidence during the sentencing hearing that Damaske had previously sexually

assaulted other women without permitting him to cross-examine them. This claim, too, is without merit.

Although an opportunity for cross-examination is, of course, required at trial, *Delaware v. Fensterer*, 474 U.S. 15, 19–20 (1985), "there are significant differences between the jury's role in adjudicating guilt and the trial court's responsibility to determine an appropriate sentence." *State v. Marhal*, 172 Wis. 2d 491, 503, 493 N.W.2d 758, 764 (Ct. App. 1992). As recognized by Justice Hugo L. Black in a decision for the United States Supreme Court almost a half-century ago:

> Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations. But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law. Out-of-court affidavits have been used frequently, and of course in the smaller communities sentencing judges naturally have in mind their knowledge of the personalities and backgrounds of convicted offenders.

*Williams v. New York*, 337 U.S. 241, 246 (1949) (footnotes omitted). Thus, for example, a sentencing court may consider conduct for which the defendant has been acquitted. *Marhal*, 172 Wis. 2d at 503–504, 493 N.W.2d at 764; *see also United States v. Watts*, 519 U.S. —, 117 S. Ct. 633, 136 L.Ed.2d 554 (1997) (*per curiam*) (under the federal sentencing guidelines). Moreover, as pertinent here, a "trial court in imposing sentence for one crime can consider other unproven offenses, since those

195

other offenses are evidence of a pattern of behavior which is an index of the defendant's character, a critical factor in sentencing." *Elias v. State*, 93 Wis. 2d 278, 284, 286 N.W.2d 559, 562 (1980). *See also State v. McQuay*, 154 Wis. 2d 116, 126, 452 N.W.2d 377, 381 (1990) ("Evidence of unproven offenses involving the defendant may be considered by the court" in "determining the character of the defendant and the need for his incarceration and rehabilitation."). Cross-examination of those presenting this evidence, either in court, by letters received by the court and shared with counsel, or in statements made to a presentence writer, is not required as long as the defendant has an opportunity to rebut the evidence. *Williams*, 337 U.S. at 250 (matters properly considered by sentencing court need not be "restricted to [evidence] given in open court by witnesses subject to cross-examination"); *United States v. Lawrence*, 934 F.2d 868, 874 (7th Cir. 1991) ("[A] sentencing court may consider uncorroborated hearsay that the defendant has had an opportunity to rebut, illegally obtained evidence, and evidence for which the defendant has not been prosecuted."), *cert. denied*, 502 U.S. 938.[12]

The trial court here granted Damaske an adjournment to investigate and, if possible, rebut the charges. Although he claims that this opportunity was hampered by the women's refusal to discuss the matter with his lawyer, the trial court took that into account and, as it indicated in both its written decision denying Damaske's motion for postconviction relief and its earlier oral ruling, gave the statements the weight that it

---

[12] Damaske concedes in his reply brief on this appeal that "there is currently no *per se* right to cross-examine witness at sentencing."

deemed appropriate.[13] Damaske's due-process rights were not violated.

## D. *Effective assistance of counsel.*

Damaske claims his counsel was ineffective because he did not timely file the request for substitution against Judge Sykes.[14]

Every criminal defendant has a Sixth Amendment right to the effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and a coterminous right under Article I, § 7 of the Wisconsin

---

[13] The following is an excerpt from the trial court's written decision:

> As I indicated previously at the December 8, 1995 hearing on this issue, the defendant's due process rights were not violated by his inability to confront these people.

> . . . I can give those prior episodes to the extent that they are going to be talked about here the weight that they deserve recognizing that the matters did not go to trial, the witnesses weren't subjected to cross-examination, that there was no right of confrontation and so on in giving to them the weight that they deserve. . . .

[Citation omitted.] For these reasons, I find that the defendant has not established by clear and convincing evidence that a manifest injustice would result if he were not allowed to withdraw his plea of no contest. His motion to withdraw his plea at this time is therefore denied.

[14] In making this argument, Damaske assumes "that the time for filing the request in fact runs from the date of actual notice." Damaske does not argue that his lawyer's performance was deficient because he did not seek review of Judge Sykes's denial of the substitution request, and, accordingly, we do not address this issue. *See Schenkoski v. LIRC*, 203 Wis. 2d 109, 115 n.3, 552 N.W.2d 120, 122 n.3 (Ct. App. 1996) ("An issue raised but not briefed or argued is deemed abandoned.").

Constitution, *State v. Sanchez*, 201 Wis. 2d 219, 226–236, 548 N.W.2d 69, 72–76 (1996). In order to establish violation of this fundamental right, a defendant must prove two things: (1) that his or her lawyer's performance was deficient, and, if so, (2) that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *see also Sanchez*, 201 Wis. 2d at 236, 548 N.W.2d at 76. A lawyer's performance is not deficient unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The defendant must also prove prejudice; that is he or she must demonstrate that the trial lawyer's errors "were *so* serious *as to* deprive the defendant of a fair trial, a trial whose result is reliable." *Ibid*. Put another way: "In order to show prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Sanchez*, 201 Wis. 2d at 236, 548 N.W.2d at 76 (quoting *Strickland*, 466 U.S. at 694). This "prejudice" component of *Strickland* "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In assessing a defendant's claim that his or her counsel was ineffective, a court need not address both the deficient-performance and prejudice components if the defendant does not make a sufficient showing on one. *Strickland*, 466 U.S. at 697; *Sanchez*, 201 Wis. 2d at 236, 548 N.W.2d at 76.

A timely-filed request for substitution would have removed Judge Sykes from Damaske's case. Yet, Damaske has not shown that Judge Sykes's handling of Damaske's case rendered "the proceeding fundamentally unfair," *see Fretwell*, 506 U.S. at 372, or that she was not impartial, *see Strickland*, 466 U.S. at 686. Judge Sykes handled the case with grace, understanding, patience, and fairness, all in the face of a defendant who repeatedly flip-flopped in his positions and who, she wrote in her decision, was "manipulating the system for delay purposes." Judge Sykes's rulings on the legal issues surrounding Damaske's attempt to withdraw his plea and the subsequent sentencing were correct.[15] Her statement on sentencing reflects a careful consideration of all the appropriate factors; indeed, other than Damaske's unhappiness that Judge Sykes considered the statements of the other women he is alleged to have raped, he does not challenge on this appeal the exercise of her sentencing discretion.

Apparently recognizing that he cannot show that the proceedings before Judge Sykes were "fundamentally unfair," *see Fretwell*, 506 U.S. at 372, Damaske argues for a *per se* rule. The denial of a timely-filed request for substitution is grounds for reversal, *State v. Austin*, 171 Wis. 2d 251, 255–259, 490 N.W.2d 780, 782–784 (Ct. App. 1992), unless, as we hold above, the

---

[15] We do not decide whether Judge Hansher's statement on May 22, 1995, that Judge Sykes would take over Damaske's case was sufficient "notice" under § 971.20(5), STATS. *See Hoffman*, 227 Wis. at 300, 277 N.W. at 665 (only dispositive issue need be addressed); *Blalock*, 150 Wis. 2d at 703, 442 N.W.2d at 520 ("cases should be decided on the narrowest possible ground").

right to rely on the substitution request was waived. This aspect of Damaske's appeal, however, is presented to us as an ineffective-assistance-of-counsel claim. The United States Supreme Court has held that there is a significant distinction between the consequences on appeal of trial-court error and the consequences of that same error when it is raised in an ineffective-assistance-of-counsel context. Thus, *Kimmelman v. Morrison*, 477 U.S. 365 (1986), recognized that although a defendant appealing the improper denial of a Fourth-Amendment suppression motion "need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy in the item or place at issue," a defendant asserting an ineffective-assistance-of-counsel claim must prove "that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.*, 477 U.S. at 374–375. *See also State ex rel. Schmelzer v. Murphy*, 201 Wis. 2d 246, 254, 548 N.W.2d 45, 48 (1996) (no *per se* prejudice when appellate lawyer fails to perfect appeal). Of course, some deprivations of a defendant's rights are considered to be prejudicial *per se* under *Strickland*. *Strickland*, 466 U.S. at 692–693; *State v. Smith*, 207 Wis. 2d 259, 279–281, 558 N.W.2d 379, 388–389 (1997). *Smith* expanded this list to encompass a trial lawyer's failure to object to the prosecution's breach of a plea bargain, *Smith*, 207 Wis. 2d at 281–283, 558 N.W.2d at 389–390, essentially because of the difficulty in making a retrospective assessment of actual prejudice, *id.*, 207 Wis. 2d at 281, 558 N.W.2d at 389. There is no such difficulty here: the focus is on "fairness," not results. *Strickland*, 466 U.S. at 693–694. Indeed, inquiry into whether another judge would have been more lenient than Judge Sykes (who accepted the

plea-bargain and granted the State's motion to dismiss three out of the four counts), or whether another judge would have given more or less weight to the statements of the other women who claim that Damaske had raped them, is beyond the pale of an ineffective-assistance-of-counsel analysis:

> The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency. Although these factors may actually have entered into counsel's selection of strategies and, to that limited extent, may thus affect the performance inquiry, they are irrelevant to the prejudice inquiry. Thus, evidence about the actual process of decision, if not part of the record of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices, should not be considered in the prejudice determination.

*Id.*, 466 U.S. at 695.[16] The trial court correctly rejected Damaske's ineffective-assistance-of-counsel claim.

---

[16] The plea bargain limited Damaske's exposure to a ten-year sentence, which is what the prosecutor recommended and is what the trial court imposed. But prisoners in Wisconsin do not serve the time to which they are sentenced. A study commissioned by the Wisconsin Policy Research Institute reports that "the average length of a sentence in Wisconsin is 10.5 years, but the average length of actual confinement is under 2 years." J. DiIulio, *Crime and Punishment in Wisconsin* (Wisconsin Policy Research Institute Report, Vol. 3, No. 7 (1990)).

*By the Court.*—Judgment and order affirmed.