PER CURIAM.
¶ 1 Donald Rick appeals a judgment convicting him of first-degree intentional homicide. He argues the circuit court erroneously exercised its discretion by denying his presentence motion for plea withdrawal. He also argues the court erred by denying that motion without first holding an evidentiary hearing. We conclude the court properly denied Rick's motion and did not err by failing to hold an evidentiary hearing. We therefore affirm.
BACKGROUND
¶ 2 At approximately 3:20 a.m. on March 12, 2016, the Iron County Sheriff's Department received a 911 call reporting a fire at the Bear Trap Inn in Saxon, Wisconsin. When sheriff's deputies arrived at the scene, the building was engulfed in flames, and Lisa Waldros, who had been bartending at the Bear Trap Inn that evening, was missing. Two days later, investigators found Waldros's body inside the remains of the building. A subsequent autopsy revealed that she had been stabbed five times in the neck, and traces of gasoline were found on her clothing.
¶ 3 Rick, who lived a short distance from the Bear Trap Inn, provided an initial statement to law enforcement during a neighborhood canvas. He stated he and his girlfriend, Jessica Carli, went to a casino in Lac du Flambeau on the evening of March 11, 2016, arrived home between 11:00 and 11:30 p.m., went to bed shortly thereafter, and remained in bed until the next morning. Rick stated he first learned about the fire at the Bear Trap Inn when he went outside to walk his dog at about 8:00 a.m. on March 12. However, a citizen witness later told a sheriff's deputy that he saw Rick arrive at Rick's residence in a white SUV at about 4:30 a.m. on March 12, and he then talked to Rick for a short time about the fire.
¶ 4 During a subsequent interview with law enforcement on April 14, 2016, Rick admitted his involvement in the fire and in Waldros's death. He told officers that he and Carli went to a casino on the evening of March 11 and "lost all their money." While driving home, "there was discussion about needing more money," and "it was decided [Rick] would commit a robbery to obtain the money they needed." Rick explained that he decided to rob the Bear Trap Inn because it was the only nearby bar that was still open, and closed bars "would not have much money [on the premises] except start-up money for the next day."
¶ 5 Rick further explained that, after watching the Bear Trap Inn and waiting until all but one of its patrons had left, he returned to his residence and retrieved a mask and a folding hunting knife with a four-inch blade. He then went back to the Bear Trap Inn, and after the last patron left, he "rushed" and "tackled" Waldros as she attempted to leave the building. Rick threatened Waldros with his knife and demanded money, at which point she opened her purse and took out a bag containing $194 in cash. While Rick was retrieving the bag from Waldros, she pulled down his mask and recognized him. A struggle ensued, and Rick stabbed Waldros at least once in the neck, "killing [her]."
¶ 6 After killing Waldros, Rick took the money from the bag and went home. He retrieved a gasoline container and returned to the Bear Trap Inn, where he poured gasoline on and around Waldros's body. He then ignited the gasoline with a lighter because he hoped to start a fire that would "cover up" Waldros's murder.
¶ 7 The State ultimately charged Rick with six counts: first-degree intentional homicide; armed burglary; armed robbery; possession of a firearm by a felon; arson of a building; and mutilation of a corpse. The last five counts were charged as a repeater. Rick moved to suppress his incriminating statements to law enforcement, arguing they were not voluntary. The State, in turn, filed a motion in limine seeking to introduce other acts evidence regarding a prior robbery Rick had committed.
¶ 8 Before the circuit court could rule on these pretrial motions, the parties reached a plea agreement. In exchange for Rick's guilty plea to the first-degree intentional homicide charge, the other charges were dismissed and read in, and the parties remained free to argue at sentencing regarding Rick's eligibility for extended supervision. The circuit court accepted Rick's plea on December 8, 2016, and ordered a presentence investigation report (PSI). In his interview with the PSI author, Rick again admitted killing Waldros and setting fire to the Bear Trap Inn. He provided a detailed account of his actions that night, which was consistent with his previous statements to law enforcement. The PSI, which was filed on March 8, 2017, recommended that the court sentence Rick to life imprisonment without the possibility of extended supervision.
¶ 9 On May 17, 2017, Rick filed a presentence motion to withdraw his guilty plea. He did not submit an affidavit in support of his motion. Instead, he asserted within the motion that: (1) he "did not cause" Waldros's death; (2) Waldros's death "was caused by Jessica Carli"; (3) he "made the statements against interest and subsequent guilty plea to protect" Carli; (4) he had "since had time to reflect on his protection of" Carli; and (5) his own incriminating statements were the "only evidence" linking him to Waldros's death.
¶ 10 The State opposed Rick's plea withdrawal motion, arguing he had failed to establish any of the factors supporting presentence plea withdrawal that are set forth in State v. Shanks , 152 Wis. 2d 284, 448 N.W.2d 264 (Ct. App. 1989). The State also submitted several letters to the circuit court that Rick wrote after entering his guilty plea. In a letter to Carli, dated January 12, 2017, Rick again confessed to killing Waldros, stating, "We spent 5 days together after I killed Lisa and you know I was and still am ruined." In a later section of the same letter, Rick wrote, "[Y]ou mentioned on the way home from the casino that I could go knock one of the guys at the Bear Trap in the head and rob them. When we got home I decided to try it and I decided to rob the bar instead." In a letter to a woman named Janet, dated April 6, 2017, Rick again seemed to admit his involvement in Waldros's death, stating, "I feel so bad about putting my mom through this and for the pain I've caused the victim and her family."
¶ 11 The State also submitted letters Rick wrote in April and May 2017 to a woman named Mary, with whom he had apparently developed a romantic relationship after entering his guilty plea. The State emphasized that Rick sought to withdraw his plea "only after the PSI recommend[ed] life without the possibility of release on extended supervision, and after he develop[ed] a romantic relationship with a woman."
¶ 12 The circuit court held a nonevidentiary hearing on Rick's plea withdrawal motion on May 25, 2017. After considering the parties' arguments and the factors set forth in Shanks , the court concluded Rick had failed to demonstrate the existence of a fair and just reason to withdraw his plea. The court therefore denied Rick's motion. Thereafter, the court sentenced Rick to life in prison without the possibility of extended supervision. Rick now appeals, arguing the court erred by denying his plea withdrawal motion, and by doing so without first holding an evidentiary hearing.
DISCUSSION
I. Denial of Rick's plea withdrawal motion
¶ 13 We review a circuit court's decision to grant or deny a presentence motion for plea withdrawal under the erroneous exercise of discretion standard of review. State v. Jenkins , 2007 WI 96, ¶ 30, 303 Wis. 2d 157, 736 N.W.2d 24. Under that standard, we will affirm as long as the court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a reasonable conclusion. Id.
¶ 14 Withdrawal of a guilty plea before sentencing is not an absolute right. Id. , ¶ 32. Although a circuit court should "freely" allow a defendant to withdraw his or her plea before sentencing, "freely" does not mean "automatically." State v. Garcia , 192 Wis. 2d 845, 861, 532 N.W.2d 111 (1995). Instead, the defendant must prove, by a preponderance of the evidence, that there is a fair and just reason to withdraw his or her plea. Jenkins , 303 Wis. 2d 157, ¶ 32. The reason must be something other than the mere desire to have a trial, or belated misgivings about the plea. Id.
¶ 15 The term "fair and just reason" does not "lend itself to scientific exactness." State v. Harvey , 2006 WI App 26, ¶ 25, 289 Wis. 2d 222, 710 N.W.2d 482. However, in Shanks , we listed several factors courts should consider when analyzing whether a fair and just reason exists, namely: (1) an assertion of innocence by the defendant; (2) a genuine misunderstanding regarding the consequences of the plea; (3) hasty entry of the plea; (4) confusion on the defendant's part; (5) coercion by defense counsel; and (6) whether the defendant promptly filed his or her plea withdrawal motion. Shanks , 152 Wis. 2d at 290. We also observed that a defendant's proffered "fair and just reason" must be "plausible"-that is, it must be "supported by the evidence of record." Id. In other words, a defendant must do more than merely allege a fair and just reason; he or she must also show that the reason actually exists. State v. Kivioja , 225 Wis. 2d 271, 291, 592 N.W.2d 220 (1999).
¶ 16 Here, Rick argues he established a fair and just reason to withdraw his guilty plea by asserting that he did not kill Waldros, that his confession to that crime was false, and that he falsely confessed in order to protect his then-girlfriend, Carli, who was the true perpetrator. After analyzing the factors set forth in Shanks , the circuit court determined Rick had failed to establish a fair and just reason to withdraw his plea. We conclude the court properly exercised its discretion in that regard.
¶ 17 First, Shanks states that a defendant's assertion of innocence, while "important," is "not in itself dispositive." Shanks , 152 Wis. 2d at 290. Shanks therefore indicates that Rick's mere assertion of innocence, without more, is an insufficient basis to permit him to withdraw his guilty plea.
¶ 18 In addition, a defendant's proffered "fair and just reason" for plea withdrawal must be "plausible." See id. The circuit court expressly found that Rick's assertion of innocence was not "credible" or "plausible," based on his prior inculpatory statements to law enforcement, as well as his statements to the court during the plea hearing. The court also observed that, in letters written from prison after Rick entered his plea, he "voluntarily offered his information that he committed this crime and admitted ... that he was the person who did this." As the court recognized, Rick's multiple, consistent inculpatory statements cut against a conclusion that he simply confessed to a crime he did not commit in order to protect his then-girlfriend. The court also reasonably found that Rick's recent assertions of innocence were not credible because they were merely an attempt "to gain some assemblage of advantage because of a new found interest in a girl friend that has been a recent development in his life."
¶ 19 Moreover, in addition to admitting his role in Waldros's death in letters written after he entered his guilty plea, Rick also admitted his guilt to the PSI author after entering his plea and described in detail how he killed Waldros and set fire to the Bear Trap Inn. We observed in Shanks that "incriminating statements by a defendant subsequent to the plea could, as a practical matter, make a defendant's guilty or no contest plea irrevocable." Id. at 290. Rick's multiple admissions of guilt after entering his plea therefore undermine his claim that his more recent assertions of innocence constitute a fair and just reason for plea withdrawal.
¶ 20 Second, Shanks directs a court to consider whether the defendant genuinely misunderstood the consequences of his or her plea. Id. The circuit court concluded there was no genuine misunderstanding in this case, and the record supports that conclusion. The court's plea colloquy, along with the plea questionnaire and waiver of rights form that Rick completed, informed Rick of the elements of the offense, the potential penalty, and the constitutional rights he waived by entering his plea. Notably, Rick has never asserted-either in the circuit court or on appeal-that he misunderstood the consequences of pleading guilty.
¶ 21 Third, Shanks states a fair and just reason for plea withdrawal may exist where the defendant hastily entered his or her plea. Id. However, the record shows that did not occur in this case. Rick was charged in June 2016, and he did not enter his guilty plea until December 2016-approximately six months later. Moreover, Rick has never claimed that he entered his plea in haste or lacked sufficient time to decide whether to plead guilty.
¶ 22 Fourth, Shanks states that confusion on the defendant's part may constitute a fair and just reason for plea withdrawal. Id. at 290. Here, however, Rick has never claimed that he was confused in any way when he entered his plea. In addition, the circuit court expressly found that there was "no confusion" on Rick's part, noting he was "a sophisticated person in terms of experience with the criminal justice system." Our review of the plea hearing transcript confirms that Rick did not exhibit any confusion during that hearing.
¶ 23 Fifth, Shanks directs us to consider whether Rick's trial attorney coerced him into pleading guilty. See id. The circuit court found "no coercion" by trial counsel and expressly noted that Rick's attorney had "at all times conducted herself with professionalism and care in representing [him]." Rick also confirmed during the plea hearing that his guilty plea was not the result of any promises or threats. Furthermore, Rick has never claimed that his trial counsel coerced him to plead guilty.
¶ 24 Sixth, Shanks states a relevant factor in assessing a presentence motion for plea withdrawal is whether the motion "was expeditiously brought or was delayed." Id. Rick did not move to withdraw his guilty plea until May 2017, over five months after the plea was entered. In the meantime, he continued to make inculpatory statements, both in letters written from jail and in his interview with the PSI author. Additionally, the circuit court found that Rick had "plenty of time to contact his attorney" about withdrawing his plea, but he nonetheless waited to do so until shortly before his scheduled sentencing hearing. Under these circumstances, the court could reasonably conclude that Rick's motion for plea withdrawal was motivated not by a genuine claim of innocence, but by his receipt of the PSI, which recommended life imprisonment without eligibility for extended supervision. A defendant may not delay filing a motion for plea withdrawal until he or she has had the opportunity to test the weight of potential punishment. See Dudrey v. State , 74 Wis. 2d 480, 485-86, 247 N.W.2d 105 (1976).
¶ 25 Rick does not address the Shanks factors in his reply brief. As the above discussion demonstrates, none of those factors support a conclusion that Rick has established a fair and just reason to withdraw his guilty plea. Accordingly, the circuit court did not erroneously exercise its discretion by denying Rick's plea withdrawal motion.[1]
II. Failure to hold an evidentiary hearing
¶ 26 Rick next argues that, even if the circuit court properly determined that the record before it did not establish a fair and just reason for plea withdrawal, the court erred, as a matter of law, by denying his motion without an evidentiary hearing. A circuit court is not required to hold an evidentiary hearing on a presentence motion for plea withdrawal when the allegations in the motion are insufficient to raise a question of fact, when the motion presents only conclusory allegations, or when the record conclusively demonstrates that the defendant is not entitled to relief. State v. Damaske , 212 Wis. 2d 169, 190, 567 N.W.2d 905 (Ct. App. 1997). Allegations are conclusory when they fail to present the "who, what, where, when, why, and how" with sufficient particularity for the court to assess the defendant's claim. See State v. Allen , 2004 WI 106, ¶¶ 23, 36, 274 Wis. 2d 568, 682 N.W.2d 433. Whether a motion alleges sufficient material facts so as to require an evidentiary hearing is a question of law that we review independently. Id. , ¶ 9.
¶ 27 In this case, we conclude Rick's plea withdrawal motion failed to present sufficient nonconclusory allegations to warrant an evidentiary hearing. Rick's motion merely alleged that he did not kill Waldros, and that Carli did. However, despite those allegations, Rick's motion did not specifically explain where, when, why, or how Waldros's death occurred. Absent those important details, the court was not required to hold an evidentiary hearing on Rick's motion. Moreover, Rick did not file a sworn affidavit attesting that it was, in fact, Carli who killed Waldros.
¶ 28 The contrast between the nonspecific claim of innocence in Rick's plea withdrawal motion and the detailed inculpatory statements he previously made to law enforcement and the PSI author further supports a conclusion that his motion did not contain sufficient factual allegations to require an evidentiary hearing. A court "does not have to hold an evidentiary hearing on a motion just because a party asks for one. An evidentiary hearing is necessary only if the party requesting the hearing raises a significant, disputed factual issue." State v. Velez , 224 Wis. 2d 1, 12, 589 N.W.2d 9 (1999) (quoting United States v. Sophie , 900 F.2d 1064, 1070 (7th Cir. 1990) ). Rick failed to do so here, and the circuit court therefore properly denied his motion without an evidentiary hearing.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

Once a defendant proves a fair and just reason for plea withdrawal by a preponderance of the evidence, the burden shifts to the State to show that it would be substantially prejudiced if the defendant were allowed to withdraw his or her plea. State v. Lopez , 2014 WI 11, ¶ 61, 353 Wis. 2d 1, 843 N.W.2d 390. Because Rick has failed to establish a fair and just reason for plea withdrawal, we need not address substantial prejudice.