STATE of Wisconsin, Plaintiff-Respondent,

v.

Yolanda M. SPEARS, Defendant-Appellant.†

Court of Appeals

*No. 97–0536–CR. Submitted on briefs April 7, 1998.—Decided June 9, 1998.*

(Also reported in 585 N.W.2d 161.)

---

†Petition to review granted.

---

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard D. Martin,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Pamela Magee,* assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Yolanda M. Spears appeals from the judgment of conviction, following her *Alford*[1] plea, for second-degree intentional homicide, and from the order denying her motion for postconviction relief. Spears argues that the sentencing court erred in ruling that her victim's criminal record was irrelevant to sentencing. We agree. Accordingly, while we affirm the judgment of conviction, we reverse the trial court's postconviction order and remand for resentencing.

---

[1] *See North Carolina v. Alford,* 400 U.S. 25 (1970); *see also State v. Garcia,* 192 Wis. 2d 845, 532 N.W.2d 111 (1995).

On the night of July 14, 1995, Spears and three friends, Necole Winters, Latoya Austin, and Tanya Austin, were celebrating Latoya's birthday at taverns in Milwaukee. At approximately 2:30 a.m., as the four women were heading for their cars, a stranger, later identified as Phillip Young, approached Spears and Winters and, after struggling with them, stole their purses. According to Winters, when Spears refused to surrender her purse, Young punched Spears twice in the face, grabbed Spears's purse, turned and snatched her (Winters's) purse, and then fled. According to other witnesses at the scene, a person unrelated to the four women then chased and tackled Young. Spears and others then beat and kicked Young and retrieved the two purses. Young then fled.

Still very upset by the purse-snatching, Spears announced that nobody was going to get away with taking her purse. She grabbed Winters's car keys, sped off in Winters's car, and within a few blocks located Young. Spears then drove onto the sidewalk and attempted to run him over. She then drove back into the street and, after a second chase down the sidewalk, struck Young with the car, throwing him into the street. Spears then drove a few blocks away, made a U-turn, and again aimed the car at Young who remained lying in the street. Spears then accelerated and ran over Young, causing his death.

On September 13, 1995, pursuant to a plea agreement, Spears entered an *Alford* plea.[2] At sentencing, the State recommended fifteen years' imprisonment

---

[2] As the trial court noted in its order denying Spears's post-conviction motion, "The defendant characterized her plea as 'pursuant to *Alford*,' although there was no denial of guilt, rather a claim by the defendant that she did not recall what happened after her purse was taken."

and presented numerous members of Young's family who addressed the court on his behalf. The prosecutor also summarized the facts of the case, acknowledging that Young had instigated the confrontation leading to his death.

The court also heard from Spears, her attorney, and two members of her family, and considered a presentence report. Spears's counsel also had submitted a sentencing memorandum, which included a printout of Young's criminal record. The record showed that Young had convictions for burglary, attempted theft, theft and robbery, and had numerous other arrests. When the prosecutor objected to the introduction of Young's criminal record, the trial court stated:

> It was filed as part of these proceedings, I'm not going to strike it or delete it in some formal way. I will listen to what [defense counsel] wants to say, but I agree that the specific prior record of the victim is not relevant at all to these proceedings.

The court sentenced Spears to twenty years' imprisonment, and subsequently denied her postconviction motion requesting a new sentencing hearing based on the court's failure to consider Young's criminal record.

Spears argues that Young's "prior criminal record was relevant to rebut his family's inaccurate portrayal of him." She contends that the sentencing court erred in ruling that Young's criminal record was irrelevant to the sentencing decision. Spears's contention is correct.

The principles governing appellate review of a court's sentencing decision are well established. *See State v. Larsen*, 141 Wis. 2d 412, 426, 415 N.W.2d 535, 541 (Ct. App. 1987). Appellate review is tempered by a strong policy against interfering with the trial court's

sentencing discretion. *See id.* We will not reverse a sentence absent an erroneous exercise of discretion. *See State v. Thompson,* 172 Wis. 2d 257, 263, 493 N.W.2d 729, 732 (Ct. App. 1992). In reviewing whether a trial court erroneously exercised sentencing discretion, we consider: (1) whether the trial court considered the appropriate sentencing factors; and (2) whether the trial court imposed an excessive sentence. *See State v. Glotz,* 122 Wis. 2d 519, 524, 362 N.W.2d 179, 182 (Ct. App. 1984). The primary factors a sentencing court must consider are the gravity of the offense, the character of the offender, and the protection of the public. *See Larsen,* 141 Wis. 2d at 427, 415 N.W.2d at 541. The weight to be given each factor is within the sentencing court's discretion. *See Cunningham v. State,* 76 Wis. 2d 277, 282, 251 N.W.2d 65, 67–68 (1977).

At the sentencing hearing, the trial court heard from eight members of Young's family.[3] They spoke at length about Young's good character and their relationships with him. Some questioned whether he had committed any crime on the night of his death. For example, one of Young's sisters doubted that Young was capable of purse-snatching, stating, "I cannot see my brother as doing the things they all claim that he had done." She continued:

> Basically—and I don't understand what is happening, considering the fact that most of the—most of the evidence from what everyone has gathered, as far as what he partake in the crime of snatching the purse—was coming from the victims. Of course the[y] are going to say something that will benefit them so they can get off, whatever. I don't know, but

[3] Seven of the eight people who gave statements were Young's relatives; the other person was the mother of his child.

I cannot perceive my brother as being that type of person, and for her to do this was just horrifying.

One of Young's cousins told the court that Young "had a good heart, and I guess it took a woman to take him away from us because he would never hurt a woman." Several of Young's relatives, emphasizing the deep personal loss they had suffered, recommended substantial or maximum incarceration, or even execution.

In what appears to have been part of its effort to establish mitigating factors and counter any positive assertions about Young's conduct and character, the defense had included Young's criminal record with its sentencing memorandum. As noted, however, the sentencing court declined to consider the record, stating that "any prior record the victim might have had is irrelevant here . . . ." Under the circumstances of this case, we conclude that the victim's criminal record was relevant and, therefore, should have been considered.

Homicide, whether taking the life of the virtuous or the villainous, takes the most precious gift of all. That is not to say, however, that the specific circumstances of each homicide are irrelevant to a sentencing court's assessment of the gravity of the offense, the character of the offender, and the protection of the public. Those circumstances, of course, often relate to the conduct and characters of the perpetrator and victim. Further, their characters may be measured, in part, by their behavioral histories as reflected by various factors, including their criminal records. Therefore, depending on the facts and circumstances of each case, a homicide victim's criminal record may be among the factors that are relevant to sentencing.

In this case, quite appropriately, the sentencing court considered the impact of Young's death on his friends and relatives. *See* § 950.04(2m) & (10), STATS.,

*and* § 972.14(3)(a), STATS. (providing rights of felony victims and family members of homicide victims to address sentencing courts). Understandably, Young's relatives spoke glowingly of his character and, at times, they vigorously urged lengthy incarceration for his killer. In doing so, they implicitly offered a clear proposition: (1) the impact of a homicide on friends and relatives *is* relevant to a court's determination of the length of incarceration; (2) the impact *can* be measured, at least in part, by the significance of the victim in the lives of friends and relatives; and (3) the closer the relationship, the more frequent and substantial the interaction, and the more virtuous the victim, the more significant the loss. Thus, Young's relatives attempted to convey their sense that substantial incarceration was warranted for reasons including what they perceived as Young's good conduct and what they believed to be Young's virtues.

Thus, in an effort to address that proposition, Spears was entitled to attempt to counter the weight of the victim impact evidence by introducing evidence showing that Young's relatives may have overstated their loss, or may have misconceived the character of their loved one. *See State v. Bernard,* 608 So. 2d 966, 972 (La. 1992) (in capital sentencing hearings, "some evidence of the murder victim's character and of the impact of the murder on the victim's survivors is admissible as relevant to the circumstances of the offense or to the character and propensities of the offender");[4] *see also State v. Southerland,* 447 S.E.2d

---

[4] In distinguishing Louisiana's capital sentencing statute from that of Tennessee's, which allowed any evidence "relevant to the punishment," the *Bernard* court held that, in contrast to Tennessee's statute, the Louisiana law permitted the prosecutor to "introduce a limited amount of general evidence providing

862, 867 (S.C. 1994) (Although holding that victim's bad character could not be introduced when the State did not offer any victim impact evidence, the court noted that a "defendant may rebut victim impact evidence offered by the State" so long as it does not result in comparative character analysis as prohibited by *Payne v. Tennessee*, 501 U.S. 808 (1991)), *overruled on other grounds by State v. Chapman*, 454 S.E.2d 317 (S.C. 1995).[5] Faced with recommendations that she serve a lengthy prison sentence, in part, *because* of the

identity to the victim and a limited amount of general evidence demonstrating harm to the victim's survivors . . . at the penalty phase." *State v. Bernard*, 608 So. 2d 966, 971 (La. 1992) (discussing *Payne v. Tennessee*, 501 U.S. 808 (1991)). Calling victim worth evidence a double-edged sword, the court also cautioned: "If the prosecutor can introduce evidence of the degree of the victim's social standing or business or professional success, the defense arguably will be obliged to present degrading evidence about the murder victim in the appropriate case in order to show lack of victim worth." *Bernard*, 608 So. 2d at 971 n.7.

[5] Although distinguishable because they involved sentencing by juries in capital cases, *Bernard* and *State v. Southerland*, 447 S.E.2d 862 (S.C. 1994), both relying on *Payne*, are helpful to the analysis. *Payne* reaffirms that a defendant's " 'personal responsibility and moral guilt' " are relevant sentencing factors, even in capital cases where sentencing is the jury's responsibility. *Payne*, 501 U.S. at 818 (citation omitted).

Prior bad acts are not admissible to prove propensity, *see* RULE 904.04(2), STATS., not because the evidence is *not* probative of whether the defendant acted in conformity with that propensity, but rather, because the evidence *is*, in a sense, *too* probative. RULE 904.04(2) does not apply at sentencing, however. *See* RULE 911.01(4)(c), STATS. Indeed, a sentencing court (unlike juries in capital cases) may consider *anything* that is helpful. *See State v. Damaske*, 212 Wis. 2d 169, 195–96, 567 N.W.2d 905, 917 (Ct. App. 1997) (citing, among other authorities, *Williams v. New York*, 337 U.S. 241, 246 (1949)).

virtue of her victim, Spears, in fairness, should have had the opportunity to recommend a lesser sentence, in part, *because* Young's criminal record compromised claims about his virtue.[6]

In this appeal, Spears does not argue that the trial court failed to carefully evaluate the required sentencing criteria and offer a thoughtful analysis of the seriousness of the crime, the circumstances of the defendant, and the protection of the community. Nor does she dispute that the trial court, except for its ruling on the criminal record, actually did consider Young's background. Thus, we clarify that our decision focuses only on the trial court's failure to consider one factor: the victim's criminal record. On remand, therefore, the trial court must consider the victim's criminal record but, of course, will still have the discretion to give the record whatever weight it deems appropriate.

*By the Court.*—Judgment affirmed; order reversed and cause remanded with directions.

[6] Although less clear from the sentencing proceedings in this case, Young's criminal record is relevant for a second reason: it supports Spears's account of the crime. Young's family portrayed him as an upright citizen, murdered in cold blood. But Spears offered a very different version of what happened that night—a version supported by Young's criminal record. Thus, without suggesting that Young's criminal record would have been admissible at trial, *see* RULE 904.04(2), STATS.; *see also State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), the court could properly consider Young's criminal record *at sentencing. See* RULE 911.01(4)(c), STATS. (rules of evidence do not apply at sentencing).