STATE of Wisconsin, Plaintiff-Respondent,

v.

Yolanda M. SPEARS, Defendant-Appellant.

Supreme Court

*No. 97–0536–CR. Oral argument April 9, 1999.—Decided July 7, 1999.*

(Also reported in 596 N.W.2d 375.)

For the plaintiff-respondent-petitioner the cause was argued by *Pamela Magee,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Richard D. Martin,* assistant state public defender.

¶ 1. DONALD W. STEINMETZ, J. We are presented with a single issue for our review: Whether the circuit court in sentencing the defendant erroneously exercised its discretion when it ruled the victim's criminal record irrelevant to its sentencing determination.

¶ 2. The State seeks review of a published decision of the court of appeals, *State v. Spears,* 220 Wis. 2d 720, 585 N.W.2d 161 (Ct. App. 1998), which affirmed a judgment and reversed an order of the Circuit Court for Milwaukee County, the Honorable John A. Franke. The circuit court denied the defendant's postconviction motion for resentencing. In her motion for postconviction relief, the defendant argued that the circuit court

erred by refusing to consider evidence of the victim's criminal record when determining her sentence.

¶ 3. We hold that evidence of the victim's criminal record is relevant to the defendant's sentence because it supports the defendant's view of the crime for which she has been convicted.[1]

¶ 4. The events leading to the crime for which Yolanda M. Spears (Spears) was convicted are disputed and lie at the heart of the defendant's appeal. In Spears' version of the events, she and her friends were celebrating her sister's birthday in the early morning hours of July 15, 1995, when Phillip Young (Young) robbed her and a friend. According to two witness accounts, Young hit Spears twice in the face in his successful effort to take her purse. The witnesses also told police that Young stole the purse of another woman who was with Spears. Immediately following the robbery, an unknown bystander chased Young, beat him, and successfully retrieved both purses.

¶ 5. Members of Young's family cast doubts upon Spears' version of the events, questioning whether Young stole her purse, much less violently assaulted her. Of the events of July 15, 1995, whether Young physically assaulted Spears is the only disputed question for the purposes of this appeal.

¶ 6. After her purse was returned to her, Spears took the keys to a friend's car and with it chased Young,

---

[1] Because we hold that a defendant has the right to present evidence supporting her view of the crime, we decline to address the defendant's additional arguments that the victim's criminal record was relevant to rebut "good" character evidence with evidence of the victim's "bad" character and that the record was relevant to the three sentencing factors that a circuit court must consider when making its sentencing determination. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938).

who was on foot. A witness to the ensuing crime told police that he observed Spears driving in excess of 40 miles per hour and witnessed her drive onto a sidewalk where Young was walking. Missing Young on her first pass, she turned her car around and drove back toward Young, who had remained on the sidewalk. As Young fled down the sidewalk, he was hit by Spears and was propelled into a street. Spears drove off.

¶ 7. Moments later, having driven a couple of blocks away from Young, Spears made a U-turn and returned to the scene. According to the witness, Spears accelerated to what the witness believed to be about 50 miles per hour and ran directly over Young where he lay in the street. Young died shortly thereafter from the injuries he sustained from twice being hit by Spears.

¶ 8. On September 13, 1995, pursuant to a plea agreement, Spears entered an *Alford* plea[2] to second degree intentional homicide.[3] Prior to the sentencing hearing which was held on November 14, 1995, the circuit court received numerous letters from Young's family, Spears' family, and members of the community, each one offering personal sentiments regarding the high-profile crime and many suggesting to the court

---

[2] Spears entered a plea of guilty pursuant to *Alford. North Carolina v. Alford*, 400 U.S. 25 (1970); *State v. Garcia*, 192 Wis. 2d 845, 856, 532 N.W.2d 111 (1995). With an *Alford* plea a defendant accepts conviction but either maintains his or her innocence or declines to admit having committed the crime. *See Garcia*, 192 Wis. 2d at 856. In this case, defense counsel indicated that Spears accepted conviction but had premised her plea more upon her inability to remember her crime than upon her affirmative denial that she committed the crime.

[3] Wis. Stat. § 940.05(1)(b)(1993–94).

what the writers believed to be an appropriate sentence for Spears.

¶ 9. In anticipation of the sentencing hearing, defense counsel prepared a sentencing memorandum to which he attached a copy of the victim's criminal record. At the hearing, the prosecutor objected on grounds that the victim's criminal record was not relevant to the court's determination of Spears' sentence. The circuit court declined to formally strike the victim's criminal record, but agreed with the prosecutor that "the specific prior record of the victim [was] not relevant at all to these proceedings."

¶ 10. The circuit court then received statements from members of Young's family who generally expressed grief over his death and portrayed Young as a good-hearted person whose death at the hands of Spears required that she be given a harsh sentence. In addition, two members of Young's family questioned whether Young had violently assaulted Spears.

¶ 11. Rosie Young, one of Young's sisters, told the court that she could not "see [her] brother as doing the things that they all claim that he had done—the victim's [sic] claim that he had done. . . .I don't know, but I cannot perceive my brother as being that type of person [who would partake in the crime of physically assaulting a woman and snatching her purse]."

¶ 12. Jennifer Young, the victim's first cousin, said, "he was a man—a good man. . . . [He] had a good heart, and I guess it took a woman to take him away from us because he would never hurt a woman. He would never hurt a woman."

¶ 13. Following the statements, the prosecutor acknowledged that there was no dispute that Young had initiated the confrontation. However, she believed that the known facts left uncertain whether that con-

501

frontation involved physical force. The circuit court sought clarification on that point:

> The Court: I agree that any prior record the victim might have had is irrelevant here, but I would like to achieve as best an understanding as I can of what caused this to happen.
>
> Other than the people that were with this Yolanda Spears, is there any witness reporting a physical assault by the victim on Ms. Spears beyond the purse snatching?
>
> Ms. Heard: No. Other than the people that are with her?
>
> The Court: Yes.
>
> Ms. Heard: No, there was no one else.
>
> The Court: Any objective evidence of that? When she was arrested in Nebraska, was there a black guy [sic]? Was there a broken nose?
>
> Ms. Heard: No broken nose, no.

¶ 14. Defense counsel provided the court with the following comments from Spears' friends, the witnesses who told police they had seen Young's crime:

> Mr. Ksicinski: Ms. Austin stated to the police that she looked up and observed Young punching Yolanda in the face, break the strap, and take Yolanda's purse. She states Young came after her, carrying Yolanda's purse. Then Ms. Winters states that Necole put—meaning Ms. Win-

502

ters—put the key in the door. The black male who had taken her seat in the tavern ran up to her and Yolanda and stated, quote, this is a stick up, unquote. Necole states that this black male grabbed Yolanda's purse and Yolanda pulled it back. Necole states that the black male then hit Yolanda in the face twice with his fist, and the strap broke, and he got Yolanda's purse. Necole states that the black male suspect then came at her to take her purse and she hit him with it. . . .

¶ 15. The court, after setting forth those facts it believed relevant to Spears' sentence, made the following comments, which reveal that the statements made by Young's family created for the court a factual uncertainty with respect to Young's alleged assault on Spears:

I didn't realize until just a few days ago that there were some potential considerable factual disputes here. It was clear from the very beginning of this case, it was clear at the plea hearing that this was going to be a difficult case, that there was a considerable amount of information which would come to bare on all of those factors, the nature of this particular crime, the character of this particular defendant, and the particular interests that the community has in this—in this sentence. But I've received letters claiming that you didn't do this, that you're taking the fall for somebody else. I've received letters and heard from the victim's family indicating that they challenge at least some of the

provocation that was more or less assumed at the—at the plea hearing in this case.

I am comfortable—even though we have not had an evidentiary hearing, we have not had a trial in this matter, I'm comfortable with a reasonable view of the facts here, what I believe is what happened. I don't think there's any question that you did this. If there's any evidence that you didn't do it, then that should be—should have been or should be presented to the Court. But I'm satisfied that you did it, and there's been no claim from you specifically that you didn't do it.

There appears to be some question about the degree of provocation, but I'm satisfied that the victim in this case engaged in an assaultive offense against you and your friends. I'm satisfied that he set about, with whatever intent or particular motives he may have had, to snatch your purse, snatch more than one purse, and that this was done with some violence or at least some threat of violence.

There is some unresolved issue here about whether there was an actual physical assault on you. There's some witnesses who claim that there was. There's a family of the victim here that doesn't believe that there was.

. . .

[I]n sentencing you, I do have to try to understand what it was you did and why you did it, and whether or not a physical blow was struck. It's quite clear that you were subject to some assault, either by violence or the threat of violence, and it's on that basis—those bases that I am proceeding to decide upon a sentence that is hopefully fair to you, and fair to the victim's family in this case, and fair to the community.

504

After further discussion of the factors upon which it was relying for its decision, the circuit court sentenced Spears to 20 years in prison.

¶ 16. Subsequently, Spears filed a motion for postconviction relief, asserting first that given the facts of the case, the circuit court erroneously exercised its discretion in sentencing her to 20 years, five more than the prosecutor's recommendation. Second, Spears asserted that the circuit court erred as a matter of law when it refused to consider the victim's prior criminal record as her rebuttal to the "good" character evidence his relatives provided the court in their statements at her sentencing hearing.

¶ 17. The circuit court denied Spears' postconviction motion, concluding that while the criminal record

> would have been relevant on the issue of whether the victim was a model citizen, it was not specifically offered for that purpose nor was there any material issue in that regard. Similarly, [ ] if there had been a dispute as to whether the victim had in fact attempted to snatch the defendant's purse, his prior record would have had some relevance. Here, however there was no such dispute. I accepted that the victim provoked the incident by committing an assaultive offense against the defendant and her friend. While the victim's bad conduct and character on the night of his death was an important mitigating factor in this sentencing, the victim's general character was not a sentencing factor, and there was simply no reason to give his prior record any weight.

¶ 18. The court of appeals reversed and remanded for a new sentencing hearing, holding that a victim's criminal record was relevant to sentencing when members of the victim's family recommended

sentences that were in part based upon the victim's virtuous nature. *Spears*, 220 Wis. 2d at 728. The court of appeals also believed that Young's criminal record was relevant because it supported the defendant's view of the circumstances surrounding her crime. *Id.* at 728 n.6. We affirm on the narrow grounds that Young's criminal record should have been admitted as evidence because it tends to support the defendant's view of the circumstances surrounding her crime, the gravity of which was a sentencing factor considered by the sentencing court.

¶ 19. Sentencing decisions are left to the sound discretion of the circuit court and our review of a sentencing decision is limited to determining whether the circuit court erroneously exercised its discretion. *State v. Harris*, 119 Wis. 2d 612, 622, 350 N.W.2d 633 (1984). "A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law." *State v. Canedy*, 161 Wis. 2d 565, 579–80, 469 N.W.2d 163 (1991)(quoting *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981)). We recognize a "strong public policy against interference with the sentencing discretion of the trial court and sentences are afforded the presumption that the trial court acted reasonably." *Harris*, 119 Wis. 2d at 622. We are reluctant to interfere with the sentence the circuit court has imposed, for the circuit court is in the best position to consider the relevant factors and the demeanor of the defendant. *State v. Echols*, 175 Wis. 2d 653, 682, 499 N.W.2d 631 (1993) (citing *Harris*, 119 Wis. 2d at 622).

■

¶ 20. We have explained that a sentencing court, when fashioning a sentence, should consider all relevant and available information. *State v. Carter*, 208 Wis. 2d 142, 156, 560 N.W.2d 256 (1997). At the very least, the sentencing court must consider the following three primary factors: (1) the gravity and nature of the offense, including the effect on the victim, (2) the character and rehabilitative needs of the offender, and (3) the need to protect the public. *Id.*; *Echols*, 175 Wis. 2d 653 at 682.

■■■

¶ 21. In addition, we have identified a number of factors related to the primary factors which a circuit court might use in considering the appropriate sentence:

> '(1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention.'

*Harris*, 119 Wis. 2d at 623–24; *see also Echols*, 175 Wis. 2d at 682. A circuit court need not specifically address on the record each of these "secondary" factors; we leave to the circuit court the determination of which factors are relevant to its sentencing decision in the particular case. *Echols*, 175 Wis. 2d at 683. Imposition of a sentence may be based on one or more of the three primary factors after all relevant factors have been

507

considered. *Anderson v. State*, 76 Wis. 2d 361, 366–67, 251 N.W.2d 768 (1977).

¶ 22. The question on appeal is quite narrow in scope. The defendant does not challenge the reasoning process the circuit court used in determining her sentence. Her single point of error alleges that the circuit court erroneously exercised its discretion in refusing to consider the victim's criminal record.

¶ 23. We agree. In considering the gravity of Spears' offense, the circuit court made quite clear that it believed that the circumstances leading to her crime were relevant to its sentencing decision. Information that would have tended to clarify the events leading to that crime should have been considered relevant by the court. *See State v. Richardson*, 210 Wis. 2d 694, 705, 563 N.W.2d 899 (1997) ("Relevant evidence is evidence that has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable."). The victim's criminal record is such evidence.

¶ 24. "It is well-settled that a criminal defendant has a due process right to be sentenced only upon materially accurate information." *State v. Lechner*, 217 Wis. 2d 392, 419, 576 N.W.2d 912 (1998)(citing *United States v. Tucker*, 404 U.S. 443 (1972); *Bruneau v. State*, 77 Wis. 2d 166, 174–75, 252 N.W.2d 347 (1977)). As part of the guarantee that he or she be sentenced on reliable information, a defendant has the right to rebut evidence that is admitted by a sentencing court. *See Handel v. State*, 74 Wis. 2d 699, 704, 247 N.W.2d 711 (1976)(circuit court does not abuse its discretion in sentencing the defendant when facts contained in a presentence report are not challenged or disputed by

the defendant); *State v. Damaske*, 212 Wis. 2d 169, 196, 567 N.W.2d 905 (Ct. App. 1997)(at a sentencing hearing, a defendant need not be afforded an opportunity to cross-examine witnesses who present evidence of the defendant's prior criminal offenses "as long as the defendant has an opportunity to rebut the evidence."); *United States v. Lawrence*, 934 F.2d 868, 874 (7th Cir. 1991)(a sentencing court may consider uncorroborated hearsay so long as the defendant has had an opportunity to rebut it).

¶ 25. The transcript from the sentencing hearing reveals that there was quite clearly a dispute as to whether Young physically assaulted Spears, as the sentencing judge repeated on a number of occasions that he recognized that such a dispute existed. This factual dispute was brought to the court's attention by Young's sister and cousin in statements that the court did not exclude as irrelevant to its decision. The court's consideration of Young's criminal record may have helped it resolve this dispute for the purposes of sentencing Spears. Certainly the criminal record was relevant as evidence for the purpose of rebutting the statements made by Young's family that Young would not have hurt a woman or have partaken in a crime that involved physically assaulting a woman.

¶ 26. Our review of Young's criminal record reveals that he was arrested between 1984 and 1993 on 18 separate occasions. Among the misdemeanor and felony offenses for which he was arrested are robbery, burglary, party to battery, resisting arrest and obstructing an officer, theft, attempted theft, retail theft, bail jumping, and attempted first-degree homicide. He was not prosecuted in the case involving attempted first-degree homicide. For many of the other crimes for which he was arrested, it is not entirely clear

which cases were and which were not prosecuted. However, it is evident that he was convicted of burglary on at least three occasions, and was once convicted of robbery. He received a sentence of five years prison for the latter conviction. This criminal record reveals a history of violent crimes.

¶ 27. In finding Young's criminal record irrelevant, the circuit court erroneously exercised its discretion. Because the court admitted statements which cast doubts on the question of whether Young physically assaulted Spears, Spears should have had an opportunity to present evidence of the criminal record to rebut those statements.

¶ 28. Further, a resolution of the disputed question may have had an effect on the sentence Spears received. The circuit court purposefully left unresolved the issue of whether there was an actual physical assault on Spears. However, as the circuit court explicitly acknowledged, the events precipitating Spears' crime was relevant to its determination of the gravity of her crime. The court explained that it did "have to try to understand what it was [Spears] did and why [she] did it, and whether or not a physical blow was struck." It then sentenced Spears without as full an understanding as it might have had following consideration of Young's record. The circuit court's failure to consider the criminal record for the purposes of determining the series of events culminating in Young's death was error given that the court considered "the victim's bad conduct and character on the night of his death [ ] an important mitigating factor in this sentencing."

¶ 29. On this record, we cannot know whether the circuit court would have considered a robbery involving physical assault a greater mitigating factor than a robbery involving a non-physical assault. But it

may have. And the circuit court did not explain that its determination of whether a physical assault had in fact occurred was irrelevant to its decision. In fact, it explicitly stated that the circumstances of the crime were relevant. Therefore, Young's criminal record should have been considered in assessing whether Young's assault on Spears was likely to have been physical or non-physical, for that would reflect upon his conduct and character on the night of Spears' crime, and, perhaps, may then have had some effect on the sentence Spears received.

¶ 30. In conclusion, we hold that where a victim's criminal record supports a defendant's version of a crime, the gravity of which crime is a sentencing factor, it should be admitted as evidence at the defendant's sentencing hearing. Of course, once such evidence is admitted, the weight to be given any of the factors the circuit court considers in sentencing is fully within its discretion. *See Cunningham v. State*, 76 Wis. 2d 277, 282, 251 N.W.2d 65, 67–68 (1977).

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 31. WILLIAM A. BABLITCH, J. (*concurring*). As a general principle, the law should not allow the victim, in seeking punishment for the defendant, to lie about a material fact without fear of contradiction. Because I perceive the holding in this case to be very narrow, and very much in line with this general principle, I concur.

¶ 32. ˙ The majority does not hold, as the dissent by Justice Prosser says, that a victim's entire criminal record is admissible when it arguably supports the

511

defendant's view of the crime. *See* Prosser, J., dissenting at 521.

¶ 33. I read the majority as holding that when the victim or his or her supporters disputes the provocative circumstances leading up to the crime by misstating a material fact about the victim, the defendant does not have to stand helplessly by in the face of the lie.

¶ 34. Here, the victim's witnesses disputed the provocative nature of the victim's initial attack on the defendant. In doing so, one of the victim's supporters lied about a material fact. She said that "he had a good heart, and I guess it took a woman to take him away from us because he would never hurt a woman. He would never hurt a woman." Majority op. at 501.

¶ 35. That is a lie. On March 6, 1993, according to a criminal complaint in the record, the victim seriously injured a woman during the theft of her purse.

¶ 36. A victim's lie about a material fact should not be allowed to stand uncorrected. The defendant "must be given an opportunity to rebut or explain misinformation upon which the trial relies or to which it is exposed in its sentencing decision." *State v. Behrnes*, 706 So. 2d 179, 182 (La. Ct. App. 1997) (citing *State v. Cox*, 369 So. 2d 118 (La. 1979)). *See also U.S. v. Castellanos*, 904 F.2d 1490, 1495 (11th Cir. 1990); *U.S. v. Saintil*, 753 F.2d 984, 990 (11th Cir. 1985).

¶ 37. The principle that a defendant has a right to correct a victim's lie about a material fact does no damage to the advancement of victims' rights. There may be occasion to find an exception to that general principle, but not this case. Here, the victim's prior record puts the lie to his supporter's statement. It should be admitted. I concur.

¶ 38. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). For too many years victims have been the forgotten people in the criminal justice system. Victims frequently have viewed themselves as twice victimized—first by the criminal and then by the legal system. The victim rights movement has been a potent force for reforms that enable victims to be informed about their cases as they move through the criminal justice system and to influence the system's handing of their cases. The case before us is about one such reform—the victim's impact statement at sentencing.

¶ 39. The court of appeals concluded that because the victim's relatives described the impact of the crime on their lives to influence the circuit court to impose a lengthy prison sentence, the circuit court erred in not considering the victim's criminal record to show that the victim's relatives may have overstated their loss or may have misconceived the character of their loved one. The court of appeals wrote: "Faced with recommendations that [the defendant] serve a lengthy prison sentence, in part, *because* of the virtue of her victim, [the defendant], in fairness, should have had the opportunity to recommend a lesser sentence, in part, *because* [the victim's] record compromised claims about his virtue." *State v. Spears*, 220 Wis. 2d 720, 727–28, 585 N.W.2d 161 (Ct. App. 1998).

¶ 40. The majority opinion significantly narrows the court of appeals decision and the purposes for which a victim's criminal record is admissible at sentencing. The majority opinion holds that the victim's criminal record is admissible in this case at the defendant's sentencing because the circumstances of the crime may be considered in sentencing, the victim's criminal record is probative of the victim's assaultive

character and the victim's criminal record supports the defendant's view of the circumstances of the crime. Majority op. at 499. The majority writes that "whether [the victim] physically assaulted the [defendant] is the only disputed question for the purpose of this appeal." Majority op. at 499.

¶ 41. Assuming for purposes of this dissent, without deciding the issue, that the majority opinion is correct about the admissibility of a victim's criminal record for these limited purposes, I conclude that the majority has decided a hypothetical case, not the one presently before this court.

¶ 42. In this case the circuit court admitted the criminal record; it gave it no weight. Without using the victim's criminal record, the circuit court found that the victim had snatched the defendant's purse and had physically assaulted the defendant. The circuit court stated that "while the victim's bad conduct and character of the night of his death was an important mitigating factor in this sentencing, the victim's general character was not a sentencing factor, and there was simply no reason to give his prior record any weight."

¶ 43. The circuit court explained that it accepted the defendant's view of the circumstances of the crime and considered the circumstances of the crime in sentencing the defendant:

> ". . . I'm satisfied that [the victim] in this case engaged in an assaultive offense against [the defendant]. . . .I'm satisfied that [the victim] set about. . .to snatch [the defendant's] purse. . .and that this was done with some violence or at least the threat of violence. There is some unresolved issue here about whether there was an actual physical assault. . . .[I]n sentencing you [the defendant], I do

514

have to try to understand what it was you [the defendant] did and why you did it, and whether or not a physical blow was struck. It's quite clear that you [the defendant] were subject to some assault, either by violence or the threat of violence, and it's on that basis—those bases that I am proceeding to decide upon a sentence that is hopefully fair to you [the defendant], and fair to the victim's family in this case, and fair to the community."

Majority op. at 504.

¶ 44. Given the circuit court's acceptance of the assaultive nature of the victim and the defendant's version of the circumstances of the crime, including the victim's initiating the encounter by purse snatching and by violence or threat of violence, further evidence in the form of the victim's criminal record was not necessary. Indeed the criminal record was irrelevant. The circuit court had already accepted as true those facts to which, according to the majority opinion, the criminal record may be relevant.

¶ 45. Sentencing is a discretionary decision. An appellate court starts out with the presumption that the circuit court acted reasonably. *State v. Lechner*, 217 Wis. 2d 392, 418–19, 576 N.W.2d 912 (1998). The circuit court has wide latitude in determining the information pertinent to the sentencing decision. *State v. Marshal*, 172 Wis. 2d 491, 500 n.7, 493 N.W.2d 758 (Ct. App. 1992). The circuit court exercised its discretion in this case. Nothing in the record points to an erroneous exercise of discretion. I would therefore reverse the decision of the court of appeals and affirm the order of the circuit court.

¶ 46. As to the broader implications of the issue presented in this case, I share the concerns of the circuit court that considering the victim's criminal record

would lead to an improper balancing of the "comparative worth" of the defendant and the victim. The circuit court eloquently expressed these concerns as follows:

> For the most part, the victim's individual worth is not itself a proper factor at sentencing. . . .The court should . . .not attempt to measure the relative value of the victim's life. While the defendant may benefit when no one appears to mourn the deceased, there is no corresponding right to argue that "since nobody else cares, why should we" or to otherwise seek to diminish the value of the victim's life.
>
> Even though there might be circumstances in which the court could weigh the positive contributions and worth of the victim in assessing the harm caused by the crime, it does not follow that there is a right to have the court consider that a victim was a terrible burden on society. Such an inquiry opens a door which should remain closed. If the victim's prior criminal record is admissible, does the defendant also have the right to present evidence that the victim cheated on his taxes, was emotionally abusive to his children, suffered from chronic alcoholism, or couldn't hold a job? Such an inquiry would demean the victim families in such cases, without serving any legitimate sentencing purpose. In addition, even should a sentencing court be entitled to consider the murder of a career criminal as less serious, certainly the court has the discretion not to do so. In this case, I chose not to treat the victim's criminal record as a mitigating factor.
>
> . . . .Even the most vile member of the community has the right to be free from unlawful, violent death, and once his life has been taken we will never know what positive contributions he might yet have made.

¶ 47.　For the reasons set forth, I dissent.

¶ 48. I am authorized to state that JUSTICES ANN WALSH BRADLEY AND DAVID T. PROSSER join this dissent.

¶ 49. DAVID T. PROSSER, J. (*dissenting*). This is the way I see this case:

¶ 50. Yolanda Spears wanted vengeance. Other people would have been satisfied with the beating that she and her sister and a stranger had administered to the man who had assaulted her and taken her purse. When the stranger came out of the night to pursue and tackle her assailant, she and her sister were able to catch up with the man and kick him and punch him with the same ferocity as he had punched her.[1] She had retrieved her purse and taken her licks. But that wasn't enough to salve the hurt and indignity she felt she had suffered, and it wasn't enough to contain her rage. She had been wronged, a mighty unprovoked wrong, and she wanted vengeance. "That m——— f——— don't play like that with me," she said.[2]

---

[1] In the circuit court's decision denying defendant's postconviction motion for a new sentencing hearing, Judge John A. Franke wrote: "A person unrelated to the defendant's group gave chase and tackled Mr. Young, at which point Young was beaten and kicked, and the two purses were retrieved. Latoya Austin, another of the defendant's friends, indicated that she and the defendant participated in kicking [the victim] about 15 times before he left the area." Decision and Order at 2 (Jan. 28, 1997). Latoya Austin was a half-sister to the defendant, according to the Sentencing Memorandum, prepared for the circuit court by Mark D. Natwick, a client services specialist for the State Public Defender.

[2] The defendant's statement was quoted by a named witness and reported on page 3 of the criminal complaint.

517

¶ 51. Other people would have turned to the police and demanded that the State seek justice from the offender. But the law was too slow for Yolanda Spears. She could pass judgment herself; she could execute sentence herself. Why should she surrender to the State the righteous power she had to impose justice personally?

¶ 52. She grabbed the keys to a friend's car and sped off looking for the fleeing robber. She saw him on the sidewalk a few blocks away. He hadn't flashed any weapon when he hit her, but maybe he had a weapon after all. The automobile was her equalizer—in fact, the automobile put her in charge, gave her power, made her the boss. She drove the car onto the sidewalk and attempted to hit the man but he jumped away. She drove back onto the street, then up on the sidewalk again and chased him down the sidewalk, in hot pursuit, hitting him and knocking him into the street.

¶ 53. She drove off leaving the nameless man sprawled out in the intersection. But as she drove away, something made her stop, turn around, and go back. There was no way this punk deserved to live. She drove back several blocks to the intersection and aimed her car at the punk still laying helpless in the street. She accelerated the car and drove over his body, leaving tire tracks of vengeance on the man's back.[3]

¶ 54. Within a few days, Yolanda Spears was charged with first degree intentional homicide. The crime shocked her friends. She was a vigilante who took the law into her own hands and exacted a punishment grossly disproportionate to her victim's crime.

---

[3] Two Milwaukee police officers, David Chavez and Christopher Kraft, are cited in the criminal complaint as observing a "tire track" or a "tire mark" across the victim's back. Kraft also testified to this at the August 1, 1995, preliminary examination.

¶ 55. The nameless person she had killed was Phillip Young. He turned out to be a mother's son, a brother, a family member, the father of a small child. She had no justification in law for running him down and leaving him as road kill on a Milwaukee street.

¶ 56. The enormity of her troubles soon became clear. The legal system that was too slow to deal with Phillip Young started to crank up against her. The police located her almost immediately out in Omaha. Fortunately, she was given an excellent public defender who skillfully initiated the process of trying to rehabilitate her image.[4] Fortuitously, she had a victim with a criminal record. If her attorney and her friends could just divert attention from the conduct and the crime of Yolanda Spears to the life and crimes of Phillip Young, perhaps she could escape serious punishment.[5]

¶ 57. A preliminary hearing was held on August 1. Sometime between the August 7 arraignment and the September 6 pretrial, Spears received an offer from the State. On September 13 she accepted it, entering

---

[4] The State Public Defender Office submitted to the circuit court an impressive 7 page Sentencing Memorandum to supplement the State's presentence investigation report. The memorandum includes Spears' educational and employment history and supportive statements from teachers, friends, and family. It also attached Phillip Young's criminal record.

[5] The supplemental Sentencing Memorandum recommended that Yolanda Spears be "sentenced to a 5 to 8 year term of incarceration in the Wisconsin State Prison System." Sentencing Memorandum at p. 6. An attorney friend wrote asking "the Court to give Ms. Yolanda Spears probation with time at the House of Correction. If the Court is of the opinion that prison is justified, then I would request. . .that she receive the same 5 year prison sentence or less, as Mr. Young received for his ruthless robberies on March 6, 1993." Letter of Attorney Thomas L. Frenn, filed November 9, 1995.

an Alford plea to second degree intentional homicide. As part of the plea bargain, the State conceded that it could not prove that she did not have "adequate provocation" for the offense of first degree intentional homicide and promised to recommend only 15 years. All things considered, it was a good deal.

¶ 58. But Young's family would not cooperate. They weren't tolerant enough to understand her actions. They couldn't understand her view of the incident or why the State had reduced the charge. They worked themselves into an outrage over the demise of this no account career criminal.[6] What right did they have to spout off this way? They shouldn't be permitted to mislead the judge about the type of person Phillip Young was. They shouldn't confuse the judge about how Young had assaulted her and provoked her. *She* was the victim. She had given up her right to trial.[7] Still, Young's family was out for blood. They wanted to put her away for a long time. These people were unforgiving, vengeful. Maybe if the judge saw this guy's whole criminal record—why, there's even an unprosecuted attempted murder arrest in there—the judge would realize there's no real loss in Young's death. Maybe the judge would realize that she actually did the community a favor.

¶ 59. This, in substance, is my interpretation of this case. A young woman committed a crime of such

---

[6] Young is described as a "career criminal" in the motion for resentencing filed by the State Public Defender.

[7] In the Alford Plea Questionnaire and Waiver of Rights Form dated September 13, 1995, Yolanda Spears signed a document which read in part: "I understand that by pleading under Alford plea I will be giving up any possible defenses, including but not limited to self-defense, intoxication, insanity, lack of intent . . ."

wanton depravity that it cannot be minimized through public relations and cannot be excused. Her crime was mitigated when the charge was reduced. The circuit court was thus entirely correct in its determination that the victim's criminal record was not relevant to anything at the sentencing hearing.

¶ 60. The majority tries to cut and paste random comments into a thesis that there was a real issue about Phillip Young's assault on the defendant. This revisionist history does not hold up. In addition, this case casts an ominous shadow over future sentencing hearings. The precedent set here could live on to harm future victims of crime, victims far more sympathetic and vulnerable than Phillip Young. With this decision, this court has seriously damaged the victim's rights movement in Wisconsin and undermined a constitutional amendment. Because I believe profound issues have been wrongly decided, I dissent.

I.

¶ 61. The holding in this case is that a computer printout of a victim's entire criminal record, including multiple arrests with unknown dispositions, is relevant to the defendant's sentence when it arguably supports the defendant's view of the crime.[8] The circuit court is directed to consider the victim's criminal

---

[8] In his concurring opinion, Justice Bablitch disputes this statement. The facts are as follows: The Public Defender's Office submitted Phillip Young's entire criminal record on a computer printout. This printout was the document objected to by the State. This is also the document referred to in the majority opinion. The record also includes a copy of a robbery complaint filed against Young in 1993, but this was a document sent to the court by a citizen, Attorney Thomas L. Frenn, before the sentencing hearing. It is not the basis for the rule in this case.

record when it sentences the defendant, even though the record may be given no weight. This holding is indefensible on the facts of this case.

¶ 62. Yolanda Spears was charged with first degree intentional homicide in violation of Wis. Stat. § 940.01. The charge was filed on July 18, 1995. In the criminal complaint, Necole M. Winters is reported as saying that she observed Phillip Young hit Yolanda Spears in the face twice with his fist.

¶ 63. On August 1, the State conducted a preliminary examination. Officer Christopher Kraft testified he was told that the victim of a purse snatching had been hit. He received this information from a witness before he and the witness discovered the purse snatcher's body.

¶ 64. On August 7, the State filed an information, unilaterally reducing the charge from first degree intentional homicide to second degree intentional homicide. The reduction was justified on grounds that the State could not prove beyond a reasonable doubt that there was no "adequate provocation" in the case.

¶ 65. At the plea hearing on September 13, the assistant district attorney was asked by the court whether the defendant had made any incriminating statements. She replied that the defendant recalled "being struck, I believe she told the police, in the face and that her purse was taken."

¶ 66. On November 9, the defense filed a Sentencing Memorandum with the court. This was five days before the November 14, 1995, sentencing hearing. Referenced in and attached to the Memorandum was a 14-page computer printout of Phillip Young's criminal record. The report had been obtained on August 11, 1995, shortly after the defendant's arraignment. The report showed 18 arrests. Although the

public defender's office had almost three months to edit, correct, and clarify the printout, separating the wheat from the chaff, it did not do so.

¶ 67. On November 14, at the sentencing hearing, the State took exception to the criminal record:

> Ms. Heard: I. . .I do have an objection to some—to one of the documents. I have an objection to the sentencing memorandum that was prepared by Mark D. Natwick, the Client Services Specialist with the Public Defender's Office. I think it's inappropriate to have attached to this document what purports to be, I think, the criminal record of the victim in this case, Phillip Jerome Young. I don't believe that's relevant. . . .I guess I'd ask that that portion be deleted or removed from the presentence. I don't—I've never heard of such a thing. I don't believe it's relevant. I certainly think it's something that if Mr. Ksicinski wishes to address in sentencing statements, he can, but I don't think it's anything that should be of record and filed in this court file with regards to this case.

> THE COURT: It was filed as a part of these proceedings. I'm not going to strike it or delete it in some formal way. I will listen to what Mr. Ksicinski wants to say, but I agree that the specific prior record of the victim is not relevant at all to these proceedings.

¶ 68. Later in the hearing, the court reiterated that the victim's criminal history was not relevant, when it stated, "I agree that any prior record the victim might have had is irrelevant here, but I would like to achieve as best an understanding as I can of what caused this to happen."

¶ 69. The majority writes that "whether Young physically assaulted Spears is the only disputed ques-

tion for the purposes of this appeal." Majority op. at 499. The victim's criminal record is held to be relevant to that question.

¶ 70. But there was no *real* dispute about that question. The fact that two of the victim's relatives, two people who were not present at the robbery and had no first hand knowledge, offered unsworn emotional testimonials about the victim—"I cannot perceive my brother being that type of person" and "He would never hurt a woman"—did not create a real issue of fact because other relatives of the victim acknowledged his problems with the law, witnesses at the scene said there was an assault on Spears, and the State so strongly believed the assault claim that it reduced the first degree homicide charge saying it could not disprove that Spears had "adequate provocation" for the offense.

¶ 71. The circuit judge resolved the question at the sentencing hearing. He said:

> There appears to be some question about the degree of provocation, but I'm satisfied that the victim in this case engaged in an assaultive offense against you and your friends. I'm satisfied that he set about, with whatever intent or particular motives he may have had, to snatch your purse, snatch more than one purse, and that this was done with some violence or at least some threat of violence.
>
> . . .
>
> [I]n sentencing you, I do have to try to understand what it was you did and why you did it, and whether or not a physical blow was struck. It's quite clear that you were subject to some assault, either by violence or the threat of violence, and *it's on that basis* - those bases that I am proceeding to decide upon a sentence that is hopefully fair to you, and

524

fair to the victim's family in this case, and fair to the community. (Emphasis supplied.)

¶ 72. The judge's last comments before imposing sentence were these:

> Given that your crime resulted from a situation which was not of your making, in fact *a situation that did result initially from the victim's acts of aggression*, and given your lack of prior record, and the lack of an indication of other violent behavior on your part, I am satisfied that a maximum sentence is not necessary or appropriate in this case. (Emphasis supplied.)

¶ 73. Forcing the circuit court to consider the victim's criminal record as probative of whether the victim assaulted the defendant is not useful here because the circuit court determined that issue in the defendant's favor. The assault against Spears had already served as mitigation for her crime.

¶ 74. Had there been a *trial* of Spears for first degree intentional homicide, proof of assaultive offenses by the victim would have been relevant to the issue of whether there were mitigating circumstances in the case. But in a *trial* for second degree intentional homicide, mitigating circumstances are not a defense. Mitigating circumstances are irrelevant to second degree intentional homicide because they have already been factored into the charge.

¶ 75. By the time of the sentencing hearing, the defendant had entered her plea to second degree intentional homicide. Hence, the victim's criminal record did not make the existence of the assault on her "more probable." The mitigating circumstance of provocation had already been conceded.

¶ 76. When this court not only admits the victim's criminal record but also instructs the circuit court to consider it in sentencing the defendant, it is really declaring open season on the victim. He is dead. He cannot defend himself. What is worse, the precedent set by the court cannot logically be confined to scatter-shot criminal records.[9] The rule in this case is that evidence arguably relevant to the defendant's view of the crime is admissible in a sentencing hearing. The evidence need not comply with the rules of evidence.[10] Consequently, defendants are likely to cite this case as authority to admit evidence that would be suppressed under the rape shield statute[11] in other circumstances. Defendants are likely to cite this case as authority to bring in other kinds of evidence to discredit the victim at a sentencing hearing so long as it supports the defendant's view of the crime.

## II.

¶ 77. In holding that the circuit court erroneously exercised its discretion when it ruled the victim's

---

[9] The majority opinion stresses the fact that Young "was convicted of burglary on at least three occasions." Majority op. at 509–10. But the opinion does not reveal whether Young unlawfully entered garages or whether he was a notorious cat burglar in Shorewood. When Young's criminal record was offered, the sentencing judge was encouraged to infer the worst. The majority opinion admits that Young was "not prosecuted in the case involving attempted first degree murder." But it does not explain why Young was not prosecuted or whether he was exonerated. The majority cannot flesh out the details of Young's arrests and crimes because the details are not in the record. They can only ignore the prejudice in this exercise.

[10] Wis. Stat. § (Rule) 911.01(4)(c).

[11] Wis. Stat. § 972.11(2).

criminal record was irrelevant, this court affirms the decision of the court of appeals.

¶ 78. The court of appeals employed its own rationale in reversing the circuit court. The court said:

> Spears argues that Young's "prior criminal record was relevant to rebut his family's inaccurate portrayal of him." She contends that the sentencing court erred in ruling that Young's criminal record was irrelevant to the sentencing decision. Spears's contention is correct.
>
> Understandably, Young's relatives spoke glowingly of his character and, at times, they vigorously urged lengthy incarceration for his killer. . . . Young's relatives attempted to convey their sense that substantial incarceration was warranted for reasons including what they perceived as Young's good conduct and what they believed to be Young's virtues. . . .
>
> Spears was entitled to attempt to counter the weight of the victim impact evidence by introducing evidence showing that Young's relatives may have overstated their loss, or may have misconceived the character of their loved one. . . .
>
> Spears. . .should have had the opportunity to recommend a lesser sentence, in part, *because* Young's criminal record compromised claims about his virtue.

*State v. Spears*, 220 Wis. 2d at 723, 726, 728.

¶ 79. While this court has chosen a different rationale, it has not disavowed the rationale used by the court of appeals. The majority writes: "Because we hold that a defendant has the right to present evidence supporting her view of the crime, we decline to address the defendant's additional [argument] that the victim's

527

criminal record was relevant to rebut 'good' character evidence with evidence of the victim's 'bad' character...." Majority op. at 517 n.1. Later, in the body of the opinion, the majority opines that "As part of the [due process] guarantee that he or she be sentenced on reliable information, a defendant has the right to rebut evidence that is admitted by a sentencing court." *Id.* at 508.

¶ 80. At oral argument, counsel for the defendant explained that the victim's criminal record was included in the Sentencing Memorandum, filed five days before the sentencing hearing, in order to rebut *letters* written to the court by the victim's family and to anticipate what *might* be said at the hearing.

¶ 81. Inasmuch as this court has not disavowed the rationale employed by the court of appeals, we are apparently recognizing two distinct grounds on which to attack the character of a victim at a sentencing hearing. This court has even placed the right to rebuttal on a due process pedestal.

### III.

¶ 82. In Spears' motion for postconviction relief, her counsel openly raised the possibility that victims of crime should be treated differently, depending on their character:

> Clearly, homicides involving totally innocent victims (or even less than innocent victims whose misdeeds are themselves an isolated incident, rather than a way of life) are far more "destructive of the public safety and happiness" than this case, involving the death of a career criminal. The point is not that Ms. Spears should escape all responsibility, merely that the blameworthiness of her act must be

measured not only against the precipitating events, but the character of her assailant.

¶ 83. This theme was repeated over and over in the defendant's brief to this court. According to the brief, *"The Victim's Prior Record is Relevant Because the Law Affords Some Victims Greater Protection than Others."* App. at 17. "The death of Mr. Young was less 'destructive of the public safety and happiness' than the death of a totally innocent person. . . .At common law the use of deadly force to stop a fleeing felon was often considered legally justified. . . .*Id.* at 18. . . .The death of Mr. Young provides permanent protection for his likely future victims." *Id.* at 21.

¶ 84. These views are disturbing and inconsistent with the rule of law in a civilized society. They invite vigilantism; they rationalize intolerable behavior. It is a source of embarrassment that this court has nothing to say to repudiate these propositions.

## IV.

¶ 85. In 1993, the people of Wisconsin added a victims of crime amendment to the state constitution. Article I, sec. 9m, reads as follows:

> *This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy. This state shall ensure that crime victims have all of the following privileges and protections as provided by law:* timely disposition of the case; the opportunity to attend court proceedings unless the trial court finds sequestration is necessary to a fair trial for the defendant; *reasonable protection from the accused throughout the criminal justice process*; notification of court proceedings; the opportunity to confer with the prosecution; the opportunity to make a statement to the court at disposition; resti-

tution; compensation; and information about the outcome of the case and the release of the accused. The legislature shall provide remedies for the violation of this section. *Nothing in this section, or in any statute enacted pursuant to this section, shall limit any right of the accused which may be provided by law.* (Emphasis supplied.)

¶ 86. The amendment imposes a duty upon the State: "The state shall treat crime victims. . .with fairness, dignity and respect for their privacy." It also provides, however, that neither the amendment nor legislation implementing it "shall limit any right of the accused which may be provided by law." The rights of victims do not trump "any right of the accused"; but in the absence of some right of the accused, the rights of victims require recognition.

¶ 87. The majority opinion fails to balance the rights of victims against the interests of criminals. Rather, it creates a blueprint for criminal defendants to attack and discredit victims—throughout the entire sentencing process—if the defendant can show the attack supports the defendant's view of the crime or rebuts favorable evidence about a victim. The opinion cannot help but discourage victims and the families of victims from participating in the sentencing process. It undermines the victims of crime amendment. What a legacy for Yolanda Spears.[12]

---

[12] Circuit Judge John A. Franke performed admirably in a volatile situation. The dissenting opinion of Chief Justice Abrahamson reflects my views on how sensitively and intelligently he did his duty.